# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-3829

———————

| | | |
|---|---|---|
| Owner-Operator Independent Drivers Association, et al., | * * * | |
| Plaintiffs - Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| United Van Lines, LLC, | * | |
| | * | |
| Defendant - Appellee. | * | |

———————

Submitted: June 9, 2008
Filed: February 12, 2009

———————

Before LOKEN, Chief Judge, EBEL[*] and COLLOTON, Circuit Judges.

———————

LOKEN, Chief Judge.

Individual owner-operators who leased trucks to United Van Lines, a federally registered motor carrier (the "Owner-Operators"), and a trade association, Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), commenced this class action against United, alleging violations of the Secretary of Transportation's Truth-in-Leasing regulations, 49 C.F.R. Part 376, claims that may be brought in court under 49 U.S.C. § 14704(a)(2). Claim III alleged that United improperly charged back the

———————

[*]The HONORABLE DAVID M. EBEL, United States Circuit Judge for the Tenth Circuit, sitting by designation.

cost of federally-mandated public liability and property damage ("PL/PD") insurance. In July 2006, the district court dismissed Count III but denied United's motion to dismiss other claims. In March 2007, the court concluded that plaintiffs' claims are subject to the two-year statute of limitations found in 49 U.S.C. § 14705(c) and dismissed all remaining claims that arose prior to February 16, 2003. OOIDA v. United Van Lines, LLC, 503 F. Supp. 2d 1200, 1205 (E.D. Mo. 2007). In July 2007, the court struck plaintiffs' class allegations and dismissed OOIDA because it sued only in a representative capacity. Thereafter, the court granted the Owner-Operators' motion to dismiss all claims not previously dismissed with prejudice, and it dismissed United's counterclaims without prejudice.

All plaintiffs appeal this final order. Because the denial of class certification and resulting dismissal of OOIDA are not challenged, OOIDA is not a proper party to the appeal. The Owner-Operators argue that the district court erred in applying the two-year statute of limitations, an issue of recurring importance to the trucking industry, and in dismissing Claim III. We agree with the Eleventh Circuit's recent decision that damage actions under 49 U.S.C. § 14704(a)(2) are subject to the general four-year statute of limitations found in 28 U.S.C. § 1658 for civil actions arising under federal statutes. See OOIDA v. Landstar Sys., Inc., 541 F.3d 1278, 1297 (11th Cir. 2008). However, we affirm the dismissal of Claim III. Therefore, we reverse only the dismissal of Claims I and II asserted by plaintiffs Pelletier and Lee for the period February 17, 2001, to February 16, 2003. Interested readers will find background regarding the regulatory changes enacted by the ICC Termination Act of 1995 ("ICCTA"), the Truth-in-Leasing regulations, and judicial enforcement of those regulations in OOIDA v. New Prime, Inc., 192 F.3d 778 (8th Cir. 1999).

## I. THE STATUTE OF LIMITATIONS ISSUE

ICCTA created a private right of action in 49 U.S.C. § 14704(a)(2) for violations of the Truth-in-Leasing regulations. See New Prime, 192 F.3d at 784-85.

United asserts that another provision of ICCTA, § 14705(c), provided a two-year statute of limitations for claims brought under § 14704(a)(2). The Owner-Operators contend that ICCTA provided no limitations period for claims under § 14704(a)(2); therefore, the general four-year federal limitations period in 28 U.S.C. § 1658 applies. To frame this issue, we set forth the relevant statutory provisions:

**49 U.S.C. § 14701. General authority. . . .**

**(b) Complaints.** A person . . . may file with the Secretary or Board, as applicable, a complaint about a violation of this part by a carrier . . . .

**§ 14704. Rights and remedies of persons injured by carriers . . . .**

**(a) In general. . . .**

**(2) Damages for violations.** A carrier . . . is liable for damages sustained by a person as a result of an act or omission of that carrier . . . in violation of this part.

**(b) Liability and damages for exceeding tariff rate.** A carrier providing transportation or service . . . is liable . . . for amounts charged that exceed the applicable rate for transportation or service contained in a tariff in effect under section 13702.

**(c) Election. . . .**

**(1) Complaint to DOT or Board; civil action.** A person may file a complaint with the Board or the Secretary, as applicable, under section 14701(b) or bring a civil action under subsection (b) to enforce liability against a carrier . . . .

**§ 14705. Limitation on actions by and against carriers . . . .**

**(b) Overcharges.** A person must begin a civil action to recover overcharges within 18 months after the claim accrues. If the claim is against a carrier . . . and an election to file a complaint with the Board or

Secretary, as applicable, is made under section 14704(c)(1), the complaint must be filed within 3 years after the claim accrues.

**(c) Damages.** A person must file a complaint with the Board or Secretary, as applicable, to recover damages under section 14704(b) within 2 years after the claim accrues.

Unlike most issues of statutory interpretation, the parties in this case agree that the statutes' plain meaning supports the Owner-Operators' contention. Section 14704(a)(2) contains no limitations period, the limitations period in § 14705(c) applies only to claims under § 14704(b), and ICCTA contains no other applicable limitations period. Thus, construing these provisions in accordance with their plain meaning, claims under § 14704(a)(2) are subject to the four-year limitations period in 28 U.S.C. § 1658. The district court nonetheless concluded that, when viewed in light of the legislative history, a "plain reading of § 14705 produces an absurd result that is contrary to a common sense interpretation of the ICCTA." Accordingly, the court held, § 14705(c)'s two-year limitations period also applies to actions under § 14704(a)(2). OOIDA II, 503 F. Supp. 2d at 1204-05. We review issues of statutory interpretation *de novo*. See United States v. Springer, 354 F.3d 772, 773 (8th Cir.) (standard of review), cert. denied 542 U.S. 914 (2004).

In the usual case, if "the statute's language is plain, the sole function of the courts is to enforce it according to its terms," without reference to its legislative history. United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989) (quotation omitted). This rule "results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." Lamie v. United States Trustee, 540 U.S. 526, 538 (2004) (quotation omitted). Where the plain meaning of a statute is clear, "we are not free to replace it with an unenacted legislative intent." INS v. Cardoza Fonseca, 480 U.S. 421, 453 (1987) (Scalia, J., concurring). "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." Lamie, 540 U.S. at 542.

-4-

Like most principles of statutory construction, judicial deference to the plain meaning of a statute is not an absolute. One exception consists of those "rare cases" when a statute's plain text produces a result "demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982); see In re Kolich, 328 F.3d 406, 409-10 (8th Cir. 2003). In this case, the district court concluded that Congress intended a two-year limitations period because (i) the House Conference Report stated that 49 U.S.C. § 14705(c) "preserves the current relevant statutes of limitations for bringing suits by or against carriers and makes the time uniform for all types of traffic," H.R. Conf. Rep. No. 104-422, at 222 (1995), reprinted in 1995 U.S.C.C.A.N. 850, 906-07, and (ii) § 14704(a)(2) was moved out of § 14705(b) by an amendment that failed to amend the cross reference in § 14705(c). OOIDA II, 503 F. Supp. 2d at 1204-05.

Though this is a plausible interpretation of the legislative history, it does not establish that a four-year limitations period for § 14704(a)(2) damage actions is "demonstrably at odds" with congressional intent. The cause of action created by § 14704(a)(2) was in many respects new, so for this cause of action, there was no "current relevant statute of limitations" to preserve. See New Prime, 192 F.3d at 781. Congress subjected § 14704(a)(2) actions to no explicit statute of limitations. Congress is presumed to know that the general four-year statute would therefore apply. Section 14705(c) explicitly subjected only the administrative claims authorized by § 14704(b) to a two-year statute of limitations. The difference between two years and four years, while significant to many litigants, is not significant enough to demonstrate that one period or the other is demonstrably at odds with Congress's intent in enacting the new cause of action in § 14704(a)(2). "[T]he *sine qua non* of [this] doctrine . . . is that the meaning genuinely intended but inadequately expressed must be absolutely clear; otherwise we might be rewriting the statute rather than correcting a technical mistake." United States v. X-Citement Video, Inc., 513 U.S. 64, 82 (1994) (Scalia, J. dissenting). This exception does not apply.

-5-

Another narrow exception to the principle of rigid adherence to the plain meaning of a statute is the rare case of a "scrivener's error" that produces an "absurd result." For example, in <u>Green v. Bock Laundry Machine Co.</u>, 490 U.S. 504 (1989), all Justices agreed that, as Justice Scalia put it in his concurring opinion, Rule 609(a)(1) of the Federal Rules of Evidence, "if interpreted literally, produces an absurd, and perhaps unconstitutional, result," <u>id.</u> at 527. In <u>Chickasaw Nation v. United States</u>, 534 U.S. 84, 90-91 (2001), the Court concluded that "a failure to delete an inappropriate cross-reference" in the statute at issue was "simply a drafting mistake" that "does not warrant rewriting the remainder of the statute's language." And in <u>U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.</u>, 508 U.S. 439 (1993), a unanimous Court moved the quotation marks in a 1916 statute that amended the Federal Reserve Act, which meant that one substantive provision survived repeal in 1918. After reviewing in detail "the structure, language, and subject matter of the 1916 Act" and the 1913 statute it amended, the Court concluded that the statute's "true meaning" was "clear beyond question," and that "the placement of the quotation marks in the 1916 Act was a simple scrivener's error, a mistake made by someone unfamiliar with the law's object and design." <u>Id.</u> at 462. Because the statute's meaning was plain, the Court expressly noted, "we need not consider the 1916 Act's legislative history." <u>Id.</u> at 462 n.11.

The district court concluded, and United argues on appeal, that the plain meaning of § 14705(c) produces two absurd results -- it "applies a statute of limitations for damages actions to the subsection authorizing overcharge actions [§ 14704(b)]," and it "creates the absurd result of having two conflicting statutes of limitations for actions under § 14704(b), but no statute of limitations for actions under § 14704(a)(2)." <u>OOIDA II</u>, 503 F. Supp. 2d at 1204. We can agree that there are anomalies in the statutes suggesting that a drafting error *may* have occurred, but we disagree that the resulting statutes produce results so absurd that we may invoke the scrivener's error doctrine and rewrite them. Instead, we must allow Congress to decide whether it made a drafting mistake, and if so, whether to correct it.

-6-

Regarding the district court's first point, we do not find it absurd that § 14705(c)'s statute of limitations for "damage" claims applies to claims under § 14704(b). United explains that, in the former era of comprehensive rate regulation, claims for charges exceeding a carrier's mandatory filed rates were "overage" claims, not damage claims, and § 14704(b) claims are limited to the small universe of rates that must still be filed under ICCTA, such as "household goods," § 13702(a)(2). But in a less regulated universe, claims for "overage" are a species of claims for "damages," as the title to § 14704(b) illustrates -- "Liability and damages for exceeding tariff rate." Plainly, therefore, referring to "damages" in the title and text of § 14705(c) does not result in or even evidence an absurd result. Moreover, even if ICCTA's terminology is inconsistent with the previous regulatory regime, prior practice can be useful in interpreting ambiguous statutes, but "[i]t is a tool of construction, not an extratextual supplement." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 10 (2000).

Analysis of the district court's second point is more complex. The presence of multiple statutes of limitations for § 14704(b) claims in §§ 14705(b) and (c), and the moving of what became § 14704(a)(2) out of § 14704(b) rather late in the legislative process, raise a suspicion that failing to modify the cross-reference in what became § 14705(c) was a drafting mistake. But the results are not absurd. As we have already noted, making civil damage actions under § 14704(a)(2) subject to a four-year general statute of limitations is certainly not absurd. And even as to § 14704(b) claims, we conclude that the results may be anomalous but are not absurd.

ICCTA gave those complaining against a carrier the option to file a civil action in court, or an administrative complaint with "the Board or Secretary, as applicable." § 14704(c)(1). This election applies to overcharge complaints under § 14704(b) *and* to other complaints, which may be filed administratively under § 14701(b), or in court under § 14704(a)(2). In parallel fashion, § 14705(b) provides that a civil action to recover "overcharges" -- presumably whether or not involving filed rates -- must be

filed "within 18 months," but a claimant electing to file an administrative complaint must do so "within 3 years." While § 14705(b) standing alone would cover the universe of administrative complaints, § 14705(c) then makes a portion of this universe -- complaints "to recover damages under section 14704(b)" -- subject to a two-year limitation period. This is hardly absurd, because claims by shippers to recover carrier overages have long been subject to short limitations periods. One may wonder why claims for § 14704(b) overcharge damages filed in court under § 14704(a)(2) were not likewise made subject to the two-years limitations period. But lack of complete logic, like imprecision, awkward or ungrammatical language, and even surplusage, does not warrant rewriting the text of a statute whose meaning is plain and produces no absurd results. See Lamie, 540 U.S. at 534-37. As one Justice has explained, in applying this doctrine, "I search for a plausible purpose because a text without one may represent a 'scrivener's error' that we may properly correct." Holloway v. United States, 526 U.S. 1, 19 n.2 (1999) (Scalia, J., dissenting). Without question, plausible purposes may be discerned by reading, holistically, the text of §§ 14704 and 14705.

Our conclusion is consistent with the only other circuit court[1] and with the large majority of other district courts to consider the issue.[2] The district court noted that the

---

[1]Landstar Systems, 541 F.3d at 1297.

[2]Compare Davis v. Larson Moving & Storage Co., 2008 WL 4755835, at *3 (D. Minn. Oct. 27, 2008); Brinker v. Namcheck, 2008 WL 4298383, at *4-6 (W.D. Wis. Sep. 18, 2008); Smiley v. Smooth Operators, Inc., 2006 WL 1896357, at *3-5 (W.D. Wis. July 6, 2006); Tillman v. Bulkmatic Transp. Co., 2006 WL 1793562, at * 2 (N.D. Ill. June 27, 2006); OOIDA v. Swift Transp. Co., 2004 WL 5376210, at *5 (D. Ariz. July 28, 2004); OOIDA v. Allied Van Lines, Inc., 2004 WL 5376212, at *1 (N.D. Ill. July 16, 2004); Ruggles v. Bulkmatic Transp. Co., 2004 WL 5376213, at *2-4 (S.D. Ohio June 23, 2004); OOIDA v. Bulkmatic Transp. Co., 2004 WL 1151555, at *4-5 (N.D. Ill. May 3, 2004); OOIDA v. Ledar Transp., 2004 WL 5376211, at *5-6 (W.D. Mo. Jan. 7, 2004); OOIDA v. Heartland Express, Inc. of Iowa, 2003 U.S. Dist. LEXIS 25284, at *8-12 (S.D. Iowa Jan. 31, 2003), with OOIDA v. Mayflower Transit, Inc.,

Surface Transportation Board, charged with implementing portions of ICCTA, has stated in dicta that the last-minute moving of the damage action from § 14704(b) to § 14704(a)(2), with no corresponding change to § 14705(c), resulted in a "technical error." Nat'l Ass'n of Freight Transp. Consultants, Inc. -- Petition for Declaratory Order, 61 Fed. Reg. 60140, 60141 n.3 (S.T.B. Nov. 26, 1996); accord Gov't of Guam v. Sea-Land Serv., Inc., STB Docket No. WCC-101, 2001 WL 1436500 (S.T.B.), at *4-6 (Nov. 13, 2001). But a contrary agency interpretation is entitled to no deference when "Congress has directly spoken to the precise question at issue." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). That should be particularly true in this case, where Congress is clearly aware of the agency's views and has not enacted legislation to correct the perceived "mistake." See Safe, Accountable, Flexible, and Efficient Transportation Equity Act of 2003, H.R. 2088, 108th Cong. § 7201(f) (2003).

For these reasons, we conclude that judicial actions under 49 U.S.C. § 14704(a)(2) are subject to a four-year statute of limitations. Accordingly, the district court erred in dismissing as time-barred Claims I and II asserted by plaintiffs Pelletier and Lee for the period February 17, 2001, to February 16, 2003.

## II. THE INSURANCE CHARGE-BACK ISSUE

Federal law requires that registered carriers, such as United, file with the Secretary of Transportation a bond or PL/PD insurance policy protecting the public from personal injury and property damage caused by "the negligent operation, maintenance, or use of motor vehicles." 49 U.S.C. § 13906(a)(1); see generally 49 C.F.R. §§ 387.7, .9; H.R. Rep. No. 96-1069 (1980), reprinted in 1980 U.S.C.C.A.N. 2283, 2323-2327. The Secretary's regulations reflect this requirement. For example,

---

2006 WL 4552833, at *1-3 (S.D. Ind. July 7, 2006); Fitzpatrick v. Morgan So., Inc., 261 F. Supp. 2d 978, 982 (W.D. Tenn. 2003).

the section of the Truth-in-Leasing regulations dealing with motor carrier insurance, 49 C.F.R. § 376.12(j)(1), provides in relevant part:

> (j) *Insurance.* (1) The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to . . . regulations [issued] under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

The Owner-Operators asserted in Claim III that this regulation prohibits United from charging back to owner-operator/lessors any part of the cost of the PL/PD insurance that United must "maintain." Based on the plain meaning of the phrase "any of this insurance" in the third sentence of § 376.12(j)(1), the district court dismissed Claim III, concluding that the regulation permits registered motor carriers to charge back the costs of PL/PD insurance. The only other district court to consider this issue reached the same conclusion. See OOIDA v. Mayflower Transit, Inc., 2005 WL 4702006, at *1-2 (S.D. Ind. Sept. 26, 2005). Reviewing this issue of statutory interpretation *de novo*, we agree.

On appeal, the Owner-Operators argue, as they did in the district court, that the phrase "any of this insurance" in the third sentence of § 376.12(j)(1) refers only to the "other insurance" referred to the second sentence. On this question, we agree with and adopt the district court's reasoning:

> The first sentence [of § 376.12(j)(1)] establishes that all carriers must maintain public liability and property damage insurance. The second sentence provides that carriers and drivers may decide who is responsible for maintaining other insurance, such as bobtail insurance. The third sentence permits the carrier to charge back to the driver "any of this

insurance."  The inclusion of the word "any" and the exclusion of the word "other" signify that "this insurance" [in the third sentence] refers to all insurance referenced in the paragraph, not just to the insurance discussed in the previous sentence.

The Owner-Operators further argue that the regulation's drafting history reflects the agency's decision that carriers may not transfer their responsibility for PL/PD insurance to owner-operator/lessors. The proposed rule placed the requirement that the lease specify the carrier's obligation to maintain insurance in a separate subparagraph (4).  The final rule, in adopting what is now 49 C.F.R. § 376.12(j)(1), moved the substance of subparagraph (4) to the first sentence of the above-quoted subparagraph (1).  The agency explained that this change was intended to clarify that a carrier may not "delegate its legal responsibilities to carry . . . property damage and public liability insurance."  The final rule and the agency's explanation said nothing about whether the carrier/lessee must *pay for* PL/PD insurance.  See Lease and Interchange of Vehicles, 131 M.C.C. 141, 149-50, 1979 WL 11158 (I.C.C.), at 6-7 (1979).  Passing the cost of insurance to the owner-operator/lessor does not delegate the responsibility to "maintain" that insurance.

Finally, the Owner-Operators argue that construing § 376.12(j)(1) in accordance with its plain meaning "conflicts with federal motor carrier financial responsibility statutes" reflecting Congress's intent to bar insurance charge-backs so as to improve the carriers' level of care.  Without question, Congress requires that motor carriers maintain adequate levels of PL/PD insurance to protect the public and to encourage safer motor carrier operations.  See 49 C.F.R. § 387.1.  But the statutes requiring insurance and minimum levels of financial responsibility -- 49 U.S.C. §§ 13906(a) and 31139 -- do not specify which party to a motor carrier lease must bear the cost of that insurance.  Thus, the legislation "neither grants nor denies the [Secretary] power to regulate compensation paid under lease arrangements." Central Forwarding, Inc. v. ICC, 698 F.2d 1266, 1283 (5th Cir. 1983).  The impact on public safety of allowing carriers to transfer the cost of PL/PD insurance to owner-operator/lessors is uncertain.

See Transam. Freight Lines, Inc. v. Brada Miller Freight Sys., Inc., 423 U.S. 28, 41-42 (1975). In these circumstances, we must apply the plain language of § 376.12(j)(1) reflecting the Secretary's decision not to dictate how these private parties must resolve this aspect of their financial arrangement.[3]

The judgment of the district court is reversed insofar as it dismissed Claims I and II asserted by plaintiffs Norman Pelletier and Dennis Lee for the period February 17, 2001, to February 16, 2003. In all other respects, the judgment is affirmed.

_____

---

[3]The Owner-Operators also argue on appeal that allowing charge-backs for PL/PD insurance violates the charge-back rules in 49 C.F.R. § 376.12(h) and the "forced purchase" prohibition in § 376.12(i). Though arguably raised by the complaint, these issues were not argued in the district court, and we decline to consider them. Nothing in the plain language of these regulations prohibits carriers from passing the costs of PL/PD insurance to owner-operator/lessors.