# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1223

_____

| | | |
|---|---|---|
| Hartford Fire Insurance Company, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Donald LaVerne Clark, Jr.; | * | |
| Robin Parsons, | * | Appeal from the United States |
| | * | District Court for the |
| Defendants, | * | District of Minnesota. |
| | * | |
| Transgroup Express, Inc., | * | |
| a Washington Corporation d/b/a | * | |
| Transgroup, | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted: November 12, 2008
Filed: April 15, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Hartford Fire Insurance Company (Hartford) asserted a subrogation claim against Transgroup Express, Inc. (Transgroup). In response, Transgroup filed a motion for summary judgment based upon a statute of limitations defense. Hartford, in turn, filed a motion for summary judgment, seeking a determination of Transgroup's

liability. The district court granted Transgroup's motion and dismissed the case. In doing so, the court also purported to deny Hartford's motion for summary judgment.

Hartford appeals both rulings. We reverse the district court's grant of summary judgment in favor of Transgroup and do not consider Hartford's merits motion appeal for lack of jurisdiction. We remand to the district court for further proceedings consistent with this opinion.

## I.    BACKGROUND

Buffets, Inc., runs several restaurant chains, including Old Country Buffet. Donald Clark was Buffets' shipping and warehouse manager from April 1992 until May 2001, and was in charge of coordinating Buffets' shipping needs. Robin Parsons was the owner of Carr Freight, a shipping company Clark often utilized. Carr Freight was an affiliate of Transgroup and the two executed a "Transportation Services Agreement" whereby Carr Freight agreed to represent Transgroup in the shipping of goods. The agreement required Carr Freight to use Transgroup's bill of lading, and gave Carr Freight the right to use Transgroup's name.

In 2001, Buffets began to suspect it was overpaying for shipping, and initiated an investigation into Clark and Parsons. The investigation revealed that Clark and Parsons were involved in a scheme whereby Clark would place Buffets' shipments with Carr Freight, Parsons would inflate the amount charged to Buffets by making various misrepresentations on the bill, Clark would approve payment of these bills, and Parsons would pay Clark kickbacks out of the proceeds. Clark and Parsons have since pleaded guilty to criminal charges stemming from the scheme. Buffets filed a claim with its insurance carrier, appellant Hartford, to recover under an employee-theft insurance policy the losses resulting from the aforementioned scheme. To date, Hartford has paid roughly $3 million under the employee-theft policy.

Hartford, as Buffets' subrogee, filed this action to recover from Clark, Parsons, and Transgroup, the amounts paid to Buffets under the employee-theft insurance policy. Hartford's complaint alleged fraud, breach of fiduciary duty, intentional and negligent misrepresentation, conversion, unjust enrichment, and civil conspiracy. The district court dismissed these claims because the bill of lading limitations period had expired.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo and the evidence must be viewed in a light most favorable to the non-moving party. Abbotts v. Campbell, 551 F.3d 802, 805 (8th Cir. 2008). The parties have stipulated that Minnesota law applies to this diversity case.

The bill of lading provision in question states "[a]ll claims for overcharges must be made in writing to the home office of Transgroup Express . . . within a period of nine months and nine days after the date of acceptance of the shipment by the origin carrier." This time period is further limited to ninety days in other bills of lading between the parties. Hartford argues on appeal that the term "overcharges," as used in the bill of lading, only applies to claims where a shipper seeks reimbursement from a carrier for monies paid in excess of published tariffs. Thus, Hartford argues, the contractually shortened limitations period does not apply to its present claims for fraud, negligent misrepresentation, conversion, unjust enrichment, and breach of fiduciary duty.[1]

---

[1]Hartford also argues the limitations period is unreasonable as a matter of law and is part and parcel of the fraud scheme, or, in the alternative, that the shortened limitations period was tolled on account of the fraud. Because we agree that Hartford's claims are not "overcharges," and, therefore, the bill of lading limitations period does not apply, we do not reach the merits of these arguments.

As an initial matter, Transgroup asks us to reject Hartford's claim that "overcharges" only apply to claims made against carriers regarding monies paid in excess of published tariffs because this argument is raised for the first time on appeal. While we do not ordinarily consider such arguments, we do consider arguments that are a narrow subset of "a party's more general argument [when] no new evidence is presented on appeal." PCTV Gold, Inc. v. SpeedNet, LLC., 508 F.3d 1137, 1144 n.5 (8th Cir. 2007). Here, Hartford argued in the district court that the bill of lading provision in question did not apply to its tort and equity claims. This is the same argument Hartford makes on appeal, but Hartford now focuses exclusively on the fact that an "overcharge" has a specific meaning in the transportation industry which does not include Hartford's particular claims. Hartford argued this same general point before the district court at oral argument, stating the overcharge provision "relates more to whether the price quoted was different than the price that was billed," and that the "provision relates to [Interstate Commerce Commission] ICC regulations . . . when there were tariff rates." Further, no new evidence has been submitted or is required to decide this issue. We therefore consider Hartford's argument.

Turning to the merits of the argument, we begin by noting that contractually shortened limitations periods are narrowly construed. Fin. Timing Publ'n, Inc. v. Compugraphic Corp., 893 F.2d 936, 946 (8th Cir. 1990). We held in Financial Timing that Minnesota law allows contracting parties to limit the time in which a cause of action may be brought to a period less than that fixed by statute, but that "such provisions are not especially favored and are construed strictly against the party invoking them." Id. With this principle in mind, we turn to the bill of lading and apply basic contract principles to ascertain the meaning of "overcharges."

Under Minnesota law, when parties dispute the meaning of a word in a contract, we "must first determine as a matter of law whether [the] contract is ambiguous." Barry v. Barry, 78 F.3d 375, 382 (8th Cir. 1996). "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." Id. An

ambiguity, however, does not exist simply because the parties dispute the meaning of a contract term. Bores v. Domino's Pizza, LLC, 530 F.3d 671, 674 (8th Cir. 2008); see also Knudsen v. Transport Leasing/Contract, Inc., 672 N.W.2d 221, 223 (Minn. Ct. App. 2003). We must consider the context in which contract terms are used to ascertain their meaning and determine whether they are ambiguous based on "their plain, ordinary meaning so as to effect the intent of the parties." Barry, 78 F.3d at 382. With regard to technical terms or words of art, however, we afford these terms "their technical meaning when used in a transaction within their technical field." Restatement (Second) of Contracts § 202(3)(b) (1981).

The term "overcharges," as used in Transgroup's bill of lading, is unambiguous. In the transportation industry, this stated price has historically been the published tariff–as regulated by the ICC–and amounts charged in excess of these tariffs were recoverable as overcharges, as opposed to damages. Davis v. Portland Seed Co., 264 U.S. 403, 420 (1924); Middlewest Motor Freight Bureau v. United States, 433 F.2d 212, 232-33 (8th Cir. 1970); McCaull-Dinsmore Co. v. Great N. Ry. Co., 191 N.W. 42, 43 (Minn. 1922), overruled on other grounds by Davis, 264 U.S. at 426. Thus, historically, an "overcharge" was a specific remedy distinct from damages, and only covered monies paid in excess of tariff rates, which are not in issue in this case. Davis, 264 U.S. at 420; Middlewest, 433 F.2d at 232-33.

While the ICC was abolished under the ICC Termination Act of 1995 and the transportation industry has been mostly deregulated since that time, the definition of an "overcharge" has only been slightly modified. We recently recognized these changes in the transportation industry, but noted that in this "less regulated universe," an overcharge is "a species of claims for damages"–as opposed to being entirely distinct from damages as previously noted. Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC, 556 F.3d 690, 694-95 (8th Cir. 2009). Notwithstanding these changes, the general definition of an "overcharge" remains intact as a claim premised on monies paid in excess of a stated price, whether that price be a published tariff or

a negotiated contract price. Indeed, such a definition appears consistent with Hartford and Transgroup's intent with regard to the bill of lading because almost half the provisions in the agreement deal with tariffs, such as which tariffs govern the shipping agreement. See Barry, 78 F.3d at 382 (stating contract terms must be afforded "their plain, ordinary meaning so as to effect the intent of the parties").

Accordingly, Hartford's claims are not premised on monies paid in excess of a stated price and are therefore not "overcharges" as that term is used in the bill of lading. Rather, Hartford alleges Transgroup "misrepresent[ed] (i) the weight of the items shipped, (ii) the method used for transportation (i.e., air or ground), and/or (iii) the fair, reasonable and actual cost of the services provided." Compl. ¶ 40. Additionally, Hartford claims Transgroup aided and abetted a breach of fiduciary duty by paying bribes and kickbacks to Clark. Compl. ¶ 71. Thus, Hartford is not claiming it was charged a price higher than some stated price, which, as noted, is an overcharge. Therefore, the bill of lading provision in question shortening the limitations period for "overcharges" does not apply to Hartford's claims.

Finally, Hartford asks that we reverse the district court's denial of Hartford's motion for summary judgment as to liability, and enter judgment in Hartford's favor. Although the district court couched its ruling as a denial of Hartford's motion for summary judgment, the court also stated, correctly, that it did not rule on the merits of the motion because it had dismissed Hartford's claims as time barred. Thus, we reverse the grant of Transgroup's motion for summary judgment and remand the remaining issues to the district court for further proceedings consistent with this opinion.

## III. CONCLUSION

We reverse and remand.

_____