[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10185
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-00623-KD-N

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff - Counter Defendant - Appellee,

versus

THE MITCHELL COMPANY, INC.,

Defendant - Counter Claimant - Appellant,

JOSEPH J. CAMPUS, III,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(September 8, 2011)

Before EDMONDSON, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

The Mitchell Company, Inc. ("Mitchell Company") appeals the district court's grant of summary judgment in favor of Hartford Fire Insurance Company ("Hartford"). The sole issue presented is whether Mitchell Company's insurance policy—covering, *inter alia*, employee theft—encompasses self-dealing actions by one of its employees. We conclude it does not. Accordingly, we affirm.

I.

The insurance policy at issue, a "Crime*SHIELD* Policy for Mercantile Entities," stated that Hartford would insure Mitchell Company against covered losses in exchange for the payment of premiums. In pertinent part, the policy provided that "[Hartford] will pay for loss of or damage to 'money' . . . which results directly from 'theft' by an 'employee', whether or not identifiable, while acting alone or in collusion with other persons." "Theft" is defined as "the unlawful taking of 'money' . . . to the deprivation of the Insured."

The factual circumstances leading to Mitchell Company's claim involved dishonest dealings by Joseph Campus, a long-time Mitchell Company employee. As the head of the division responsible for single-family developments, Campus analyzed various properties and then provided a report and recommendation to Mitchell Company's board of directors, which would be followed by a tour of the recommended property. If the board of directors supported the purchase, Campus

2

would ordinarily negotiate the purchase price, and the board of directors would give final approval.

Campus engaged in a series of self-dealing transactions—outlined in detail in the district court's order—whereby he would either (1) recommend that Mitchell Company purchase properties that he owned individually or with James Young; or (2) receive a portion of the sale proceeds after recommending that Mitchell Company purchase properties owned by Young.

## II.

"We review *de novo* the district court's grant of a motion for summary judgment, considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005) (per curiam). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The interpretation of a contract is a question of law that we also review *de novo*. *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004).

In diversity cases involving insurance contracts, state law governs. *See Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 559 (11th Cir. 1983) (per curiam). In Alabama, general principles of contract law govern interpretation of

insurance policies. *Safeway Ins. Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). An insured bears the burden of establishing coverage under the policy. *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967). Courts enforce the policy terms as written, so long as they are unambiguous. *Herrera*, 912 So. 2d at 1143. That includes giving defined terms their agreed upon import and construing undefined terms according to their ordinary meaning. *See id.*

Here, we conclude that Campus's actions do not constitute "theft" because Campus did not unlawfully take the purchase funds from Mitchell Company. While he engaged in self-dealing that clearly violated his fiduciary obligations, Mitchell Company was not unknowingly deprived of money. Campus represented that a property was available, Mitchell Company authorized its acquisition, and it ultimately approved the purchase price. It bargained for, and received, property that could be used for future developments.[1]

---

[1] Mitchell Company heavily relies on *Hartford Fire Insurance Co. v. Clark*, 562 F.3d 943 (8th Cir. 2009). There, Hartford voluntarily paid out under the same type of policy when a company's shipping supervisor artificially inflated shipment invoices and then received kickbacks from the shipping company. The employee in *Clark* essentially overcharged the company for services that were never actually given or were unreasonably priced, e.g. (1) it was charged for air shipping when ground shipping occurred, (2) it paid for additional poundage that was never shipped, and (3) the employee approved unreasonable rates. The company in *Clark* never approved of paying artificially inflated shipping charges. Here, however, Mitchell Company received exactly what it bargained for—a piece of property with good title—and it approved the purchase price for just that.

Mitchell Company is careful to avoid language that would indicate it is seeking reimbursement for lost profits or lost business opportunities. In fact, it takes great issue with the district court's characterization of the situation as such. "In this case, [Mitchell Company] is not seeking coverage for lost profits. It is seeking coverage for money actually paid and lost that it would not have paid but for the unlawful actions by Campus." Appellant's Brief at 21. Mitchell Company, however, fails to demonstrate that it *lost* money. As discussed above, it decided to purchase properties, approved the purchase price, paid the purchase price, and received the exact property for which it bargained. Ultimately, Mitchell Company did not inadvertently or involuntarily depart with money, but instead willing paid a known purchase price for a known quantity.[2]

Mitchell Company points to no case law that we find persuasive.[3] In any

---

Morever, Hartford's past dealing with other insureds does not influence our interpretation of the plain, unambiguous language of the contract. *Herrera*, 912 So. 2d at 1143 ("The court must enforce the insurance policy as written if the terms are unambiguous . . . .").

[2] Mitchell Company emphatically argues that the district court erroneously concluded that Mitchell Company did "not present[] any evidence that Campus presented any false information about the property, that [Campus] assisted Young in presenting false information about the value or condition of the property[,] or that the property bargained for was not received." But we agree with the district court in so far as it concluded that Campus made no misrepresentations regarding the permanent characteristics of the real property. No one alleges as much. The previous owners' identities would in no way effect Mitchell Company's future use of the property and, accordingly, its value to the business.

[3] We do note, however, that Mitchell Company cites a case interpreting an insurance policy covering "'[l]oss resulting directly from *dishonest* or fraudulent acts committed by an

5

event, examining the plain language of Mitchell Company's insurance policy, we conclude that Campus's actions do not constitute "theft."  Accordingly, we affirm the district court's grant of summary judgment in favor of Hartford.

**AFFIRMED.**

---

Employee acting alone or in collusion with others.'"  *F.D.I.C. v. Nat'l Union Fire Ins. Co.*, 205 F.3d 66, 70 (2d Cir. 2000) (emphasis added).  Mitchell Company, however, purchased a policy covering loss by theft, not dishonesty.  It argues that the most significant principle—for purposes of this case—is the Second Circuit's conclusion that the employee's dishonest acts led directly to the loss.  *Id.* at 76.  Importantly, however, the court had already concluded that dishonest actions occurred, triggering the policy.  *Id.* at 71.  Here, we are not concerned with causation because we conclude there was no theft.