# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3570
_____

Reach Companies, LLC

*Plaintiff - Appellant*

v.

Newsert, LLC; David Serata

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 17, 2023
Filed: February 28, 2024
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

In this breach-of-contract case involving hand sanitizer sales, appellant Reach Companies, LLC, challenges the district court's[1] denial of its motion for a new trial following a jury verdict awarding appellees Newsert, LLC, and David Serata

---

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

$1,196,364 in damages. Reach raises three grounds for reversal: an alleged error in a jury instruction about parol evidence; the sufficiency of the evidence of Newsert's lost profits; and an evidentiary ruling admitting a Reach executive's prior convictions for impeachment purposes. Having jurisdiction under 28 U.S.C. § 1291, we find no errors and affirm the denial of Reach's motion for a new trial.

I.

Reach is a distribution company which sells hand sanitizer to wholesalers and is owned and operated by Jonathan Tollefson. Newsert is a wholesaler engaged in the distribution of hand sanitizer to retailers and is owned and managed by David Serata. In March 2020, Reach began accepting purchase orders[2] from Newsert for a variety of hand sanitizer products, totaling around $7 million. The relationship quickly disintegrated. According to Reach, fluctuating prices and shipping times were inevitable, which it communicated to its customers, including Serata. Despite the delays, Reach says Newsert continued to accept what Newsert alleges were "late" shipments. Eventually, Newsert cancelled its orders and Reach sued, alleging, as relevant to this appeal, a claim of breach of contract. Newsert alleged that Reach failed to fulfill all but one of its purchase orders, which caused Newsert to lose two customers. Newsert counterclaimed, also alleging breach of contract, and seeking the return of unused prepayment amounts, damages from overcharging, damages from lost profits, and cover costs.

The case was tried before a jury. The parties stipulated to the admission into evidence of a spreadsheet which memorialized the orders from the two customers Newsert asserted it lost due to Reach's breach, as well as nineteen purchase orders and corresponding invoices between Newsert and Reach. Some purchase orders listed a "Req'd Ship Date" of "ASAP," while some additionally included specific must-ship deadlines in their notes field, such as, "Must be shipped no later than

---

[2]"A document authorizing a seller to deliver goods with payment to be made later." Purchase order, Black's Law Dictionary (11th ed. 2019).

4/14." Two of the nineteen purchase orders corresponded to the two lost sales memorialized in Newsert's spreadsheet; both of those orders instructed Reach to ship the product directly to Newsert's customers rather than Newsert itself.

Tollefson, Serata, and Reach's Vice President of Sales, David Ehrlich, testified. Each testified about the relationship between the parties and what each person understood the purchase orders to mean. Tollefson testified that Serata had no issue with the price increases, understood there would be delays, and agreed that "ASAP" meant there would be no firm delivery deadline. Ehrlich testified to having had similar conversations with Serata. On cross-examination, Newsert challenged Ehrlich's credibility by questioning him about six prior criminal convictions, which the district court deemed admissible as proper impeachment evidence under Federal Rule of Evidence 609(b). Serata, in contrast to Tollefson and Ehrlich, testified that those conversations did not happen, and detailed how Newsert incurred damages from lost sales caused by Reach's breach.

While the district court initially denied Newsert's pre-trial motion in limine to exclude any parol evidence relating to the formation or terms of the purchase orders, after hearing the testimony from Tollefson, Ehrlich, and Serata, it concluded that the purchase orders at issue were not ambiguous as to their terms, including those with specific dates in the notes field. Because the jury had already heard this testimony, the district court issued Jury Instruction No. 16, instructing the jury that it should not consider testimony regarding the parties' interactions before the formation of the purchase orders to alter, supplement, or contradict their written terms.

The jury returned a verdict in favor of Newsert and awarded $1,194,364 in non-itemized damages. Reach then filed a post-trial motion with the district court seeking, as relevant here, a new trial based on the allegedly erroneous Instruction No. 16 and the sufficiency of the evidence of Newsert's lost profits from the two lost sales. The district court denied the motion, and Reach now appeals.

## II.

Reach first argues that the district court erred in denying its motion for a new trial based on the purportedly erroneous Instruction No. 16. "We review the district court's denial of a new trial for abuse of discretion." Nicholson v. Biomet, Inc., 46 F.4th 757, 762 (8th Cir. 2022). Where, as here, "a motion for new trial is based on evidentiary rulings or jury instructions, 'we will not reverse the district court in the absence of "a clear and prejudicial abuse of discretion."'" Id. (citation omitted). "In other words, '[a] new trial is necessary only when the errors misled the jury or had a probable effect on a jury's verdict.'" Id. (alteration in original) (citation omitted). Likewise, we "review the district court's jury instruction determinations for abuse of discretion." Schmidt v. Ramsey, 860 F.3d 1038, 1049 (8th Cir. 2017).

Because "[a] district court by definition abuses its discretion when it makes an error of law," Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1070 (8th Cir. 2000), Reach argues that we should "review de novo . . . the interpretations of state law embedded in the [jury] instruction[]," Schmidt, 860 F.3d at 1049. Here, Reach contends that the embedded interpretation is the district court's conclusion that, under Minnesota law, the purchase orders were unambiguous. However, Newsert asserts that because Reach did not object to Instruction No. 16 at the jury instruction conference, we should review for plain error only. Kaplan v. Mayo Clinic, 653 F.3d 720, 726 (8th Cir. 2011). We need not resolve whether our review is for abuse of discretion or plain error because even if we assume without deciding that abuse of discretion review applies to the challenged instruction, and that de novo review therefore applies to the district court's conclusion that the purchase orders were unambiguous under Minnesota law, Reach's argument still fails.

Under Minnesota law, which the parties agree applies to this diversity action, "[t]he terms of a contract are ambiguous if they are susceptible to more than one reasonable interpretation. A contract's terms are not ambiguous simply because the parties' interpretations differ." Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc., 913 N.W.2d 687, 692 (Minn. 2018) (citation omitted); see also Hartford Fire

-4-

Ins. Co. v. Clark, 562 F.3d 943, 946 (8th Cir. 2009) (same). "We must consider the context in which contract terms are used to ascertain their meaning and determine whether they are ambiguous based on 'their plain, ordinary meaning.'" Hartford Fire, 562 F.3d at 946 (citation omitted).

Here, Reach argues that the "must ship by" dates in the purchase orders' notes field reflected an "aspirational shipping deadline," whereas the "ASAP" listed in the "Req'd Ship Date" field simply conveyed that it could not guarantee a shipping date. However, this interpretation belies the "plain, ordinary meaning" of the purchase orders' terms. Id. (citation omitted). "ASAP" means "as soon as possible." ASAP, Merriam-Webster's Collegiate Dictionary (11th ed. 2020). And phrases like "must ship by" mean just that. The only *reasonable* interpretation of these terms is that the must-ship dates provided the dates by which the product *must* be shipped, and that "ASAP" otherwise required the shipment to be made as soon as possible.

Reach's argument that this interpretation renders "ASAP" surplusage is unavailing. See Dunne v. Libbra, 330 F.3d 1062, 1063 (8th Cir. 2003) (noting "the general principle of contract construction that no provision of a contract should be interpreted in a manner that would render it surplusage"). If a purchase order required that the product be shipped by a specific date, the inclusion of "ASAP" would impose an additional obligation to do so as soon as possible. The same is true in reverse. If a purchase order required that the product be shipped "ASAP," the inclusion of a specific must-ship date would impose the additional obligation to ship no later than that date. This conclusion is strengthened by the fact that some purchase orders did not specify a date in addition to "ASAP," instead requesting "ship as ready" and "ship asap." Reach's idiosyncratic understanding of these terms does not create ambiguity where none otherwise exists. Staffing Specifix, 913 N.W.2d at 692 ("[T]erms are not ambiguous simply because the parties' interpretations differ."). Accordingly, having assumed without deciding that de novo review applies to the predicate question of the purchase orders' ambiguity, we find no error in the district court's conclusion that the purchase orders were unambiguous. There was therefore no error in the district court issuing Instruction

No. 16, and, accordingly, there was no abuse of discretion in denying Reach's motion for a new trial on that ground.

## III.

Reach next asserts the district court erred in denying its motion for a new trial because "[t]he sparse record" was insufficient to prove Newsert's lost profits with reasonable certainty. "We review the denial of a motion for a new trial under an abuse of discretion standard." Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 688 (8th Cir. 2001). "A district court should grant a motion for new trial based on the sufficiency of the evidence when 'the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice.'" Lonesome Dove Petrol., Inc. v. Holt, 889 F.3d 510, 516 (8th Cir. 2018) (citation omitted). This is "an onerous burden" for a litigant since "we view the evidence in a light most favorable to the jury's verdict" and reverse "[o]nly when there is a complete absence of probative facts to support the conclusion reached." Inacom Corp., 254 F.3d at 689 (alteration in original) (citations omitted).

To prove lost-profits damages under Minnesota law, Newsert was required to "demonstrate by a preponderance of evidence that: '(a) profits were lost, (b) the loss was directly caused by the breach . . . , and (c) the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation.'" Hinz v. Neuroscience, Inc., 538 F.3d 979, 984 (8th Cir. 2008) (alteration in original) (citation omitted) (applying Minnesota law). "[T]here can be no recovery for damages which are remote, conjectural, or speculative. But damages need not be proved with certainty; it is legally sufficient that a reasonable basis for approximating loss is shown." Id. (alteration in original) (citations omitted).

At trial, Serata testified that Newsert had received orders from two customers for hand sanitizer products, and that it planned to use Reach as the supplier. The first order from Garland Sullivan was for 400,000 units of Pure Clear 16-ounce hand sanitizer at $4.30 per unit. Newsert placed a corresponding order with Reach the

-6-

next day for 400,000 units at $3.25 per unit, which provided in the notes field, "Order to ship by 4/14." The second order from the Will Group was for 100,000 units of Pure Clear one-gallon hand sanitizer. The entry for this second order did not list a unit price, but the spreadsheet itself listed a general unit price of $30.50, which Serata testified "might have been the price." Again, Newsert placed a corresponding order with Reach for 100,000 units at $23.50 per unit, which "[m]ust be shipped no later than 4/14, sooner is better."

According to Serata's testimony, neither order was timely fulfilled by Reach, and Newsert's customers subsequently cancelled their orders. Based on that testimony, the purchase orders, and the corresponding invoices, the jury could have calculated that by the time Garland Sullivan cancelled, Reach had delivered only 40,320 of the 400,000 units ordered. Accordingly, along with the spreadsheet, the jury could have calculated Newsert's lost profits from Reach's failure to timely deliver at $377,664 (a lost profit of $1.05 per unit, multiplied by 359,680 outstanding units). Likewise, the jury could have found that by the time that the Will Group cancelled its order, Reach had delivered only 54,936 units, and the jury could have calculated Newsert's lost profits on this order at $315,448 (a lost profit of $7 per unit, multiplied by 45,064 outstanding units).

Reach challenges the sufficiency of this evidence on two grounds, but neither demonstrates that the district court abused its discretion by denying the motion for a new trial. Reach first argues that Newsert did not introduce the underlying agreements or purchase orders between Newsert and the buyers, which would have established those buyers' required shipping dates. Nor, Reach argues, did Newsert introduce any documentary evidence showing that the buyers cancelled *because* of Reach's failure to deliver. But "view[ing] the evidence in the light most favorable to the verdict," it is clear there was more than "a scintilla of evidence of . . . lost profits": there were purchase orders, corresponding invoices, a spreadsheet, and Serata's testimony. Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 401 F.3d 901, 914 (8th Cir. 2005). The mere fact "that the evidence came in largely through the testimony of [Serata], who based [his] testimony on [his] review of the company's

-7-

financial records," does not warrant a new trial: "[t]he jury heard it all and determined an award was in order." Id. at 915. While Reach asserts that there is a lack of corroborating evidence, it fails to demonstrate "a complete absence of probative facts" supporting the jury's verdict. Inacom Corp., 254 F.3d at 689.

Indeed, the purchase orders, corresponding invoices, and spreadsheet that were before the jury provided figures from which the jury could calculate an exact dollar amount of lost profits, distinguishing this case from those where lost profits were found to be speculative, remote, or conjectural. See, e.g., Faust v. Parrott, 270 N.W.2d 117, 121 (Minn. 1978) (vacating and remanding for a new trial on damages in a noncompete case where prior year's tax return showing gross profit and testimony regarding "rough[]" percentage of business attributable to scrap wire sales did not demonstrate what sales were lost, nor the "actual profit[s]" that might have been earned). Likewise, Reach's argument that Serata's testimony was "self-serving" is unpersuasive: Reach had the opportunity to cross-examine Serata on that point and reveal any deficiencies in his testimony to the jury, but it chose not to. Cf. Marvin Lumber, 401 F.3d at 915 (noting, when analyzing the sufficiency of the evidence of lost profits, that a party had the opportunity to cross-examine a witness and did in fact choose to).

Second, Reach argues that the evidence was insufficient to support the award of Newsert's lost profits because Newsert's proffered calculation assumed no overhead and that the sales would have generated "pure profit." But the jury heard testimony and saw purchase orders demonstrating that Reach was to ship the product directly to Newsert's customers. As Newsert explains, this was a "drop ship[ping]" arrangement where Reach, not Newsert, would incur overhead expenses like shipping. At oral argument, Newsert's counsel conceded that Newsert essentially served as a broker and that its business could have been conducted from a laptop in a living room. On appeal, Reach points to nothing in the record suggesting that there is other yet-accounted-for overhead. We find no abuse of discretion in the district court's decision not to grant a new trial on this ground.

## IV.

Finally, Reach argues the district court erred in denying a new trial based on the erroneous admission of evidence of six of David Ehrlich's criminal convictions: a 1998 conviction for felony check forgery; a 2000 conviction for felony theft by false representation; a 2001 conviction for the same; a 2001 conviction for felony theft by swindle; a 2005 misdemeanor conviction for issuance of a dishonored check; and a 2007 conviction for federal wire fraud. The district court admitted the record of all six convictions under Federal Rule of Evidence 609(b) which, in relevant part, permits the use of a criminal conviction over ten years old to impeach a witness if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."

While we again review the denial of a motion for a new trial for an abuse of discretion, we also "review[] de novo the district court's interpretation and application of the rules of evidence, and review[] for an abuse of discretion the factual findings supporting its evidentiary ruling." Am. Mod. Home Ins. Co. v. Thomas, 993 F.3d 1068, 1071 (8th Cir. 2021) (citation omitted). "Rule 609 'is based on the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" Id. (citation omitted). However, convictions will be admitted under Rule 609(b) "very rarely and only in exceptional circumstances." United States v. Jasso, 701 F.3d 314, 317 (8th Cir. 2012) (citation omitted).

Here, we find no abuse of discretion in the district court's conclusion that this case presented the requisite "exceptional circumstances." Id. Ehrlich's convictions were numerous, they spanned a significant period of time, and they "all involved fraud and deceit." R. Doc. 123, at 7. Reach does not seriously challenge that characterization of the convictions on appeal, but instead challenges their relevance to Ehrlich's truthfulness at a trial concerning events that happened some 13 years later. See United States v. Singer, 660 F.2d 1295, 1301 (8th Cir. 1981) (holding that admission of 12-year-old convictions was an abuse of discretion).

-9-

Reach's concern is misplaced, and the "specific facts and circumstances" of this case show why. Fed. R. Evid. 609(b). First, the "probative value of . . . convictions more than ten years old is substantially increased by the number and frequency of" them. United States v. Holmes, 822 F.2d 802, 804 (8th Cir. 1987). Second, Ehrlich's dishonest conduct extended well past 2007 when, in 2013, he violated the terms of his supervised release for the wire fraud conviction by providing his probation officer with incomplete financial information and fraudulent documents, thus increasing the probative value of other instances of Ehrlich's prior crimes of dishonesty. Third, the district court sought to "strike[] a reasonable balance" and did not admit several of Ehrlich's even older crimes of dishonesty, thus limiting further potential prejudicial effects. Fourth, the district court limited any unnecessary prejudice by preventing Newsert from disclosing the specific conduct underlying Ehrlich's convictions—such as his lie to Ponzi scheme investors that he had been hired to voice act as Kermit the Frog—and issued an appropriate limiting instruction to the jury to only consider the convictions to assess Ehrlich's credibility. See United States v. Walker, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction diminishes the danger of unfair prejudice arising from the admission of the evidence.").

Reach also asserts that the district court failed to "tie[] Mr. Ehrlich's prior convictions to the facts of this case," but the connection is obvious: Ehrlich was repeatedly convicted for business-related crimes involving dishonesty, and this case "center[ed] largely on whether the parties agreed orally to terms that supplemented or modified those contained in written purchase orders." R. Doc. 123, at 7. Ehrlich's credibility was therefore "paramount." Cf. Cummings v. Malone, 995 F.2d 817, 825 (8th Cir. 1993) (finding abuse of discretion when prior inconsistent statements were not admitted and when "the parties' descriptions of the events were diametrically

opposed [and t]he entire case thus depended on whose story the jury believed"). We find no abuse of the district court's substantial evidentiary discretion.[3]

V.

For the foregoing reasons, we affirm the district court's denial of the motion for a new trial.

_____

---

[3]Accordingly, we do not reach the district court's alternate holding that Ehrlich's reincarceration for violation of his supervised release tolled Rule 609(b)'s ten-year limit and thus rendered the 2007 wire fraud conviction automatically admissible as a crime of dishonesty under Rule 609(a). See, e.g., United States v. Lapteff, 160 F. App'x 298, 304 (4th Cir. 2005) (per curiam) (holding that a violation of supervised release resulting in reincarceration "constitutes confinement for the original conviction within the meaning of Rule 609(b)").