# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3573

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Randolph Lone Fight, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 16, 2010
Filed: November 22, 2010

_____

Before RILEY, Chief Judge, CLEVENGER,[1] and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Randolph Lone Fight was convicted of three counts of involuntary manslaughter. The district court[2] sentenced Lone Fight to a total term of 231 months' imprisonment, and Lone Fight appeals. Lone Fight contends that the district court

_____

[1]The Honorable Raymond C. Clevenger, III, Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

[2]The Honorable Daniel L. Hovland, then Chief Judge, United States District Court for the District of North Dakota.

erred by ordering that the sentences for the three counts of conviction should run consecutively. We affirm.

On October 17, 2008, Lone Fight met Cornelius Everett and Harold Bolman at the Four Bears Casino in New Town, North Dakota. Lone Fight invited Everett to accompany him to a party in nearby Mandaree. Lone Fight, Everett, and Bolman proceeded to Mandaree in a vehicle driven by Lone Fight. While traveling west on North Dakota Highway 23, Lone Fight attempted to pass a semi-trailer truck in a no-passing zone. Lone Fight's vehicle struck an eastbound vehicle head-on. Tragically, the collision killed Dorene Standish and two minor children, L.C. and J.C., who were the three occupants of the eastbound vehicle. A blood sample drawn from Lone Fight after the accident showed that his blood-alcohol content was 0.15 percent.

Pursuant to a plea agreement with the government, Lone Fight pled guilty to three counts of involuntary manslaughter committed in Indian country, in violation of 18 U.S.C. §§ 1112 and 1153. The presentence investigation report ("PSR") prepared for sentencing recommended that Lone Fight's advisory guideline sentencing range was 77 to 96 months' imprisonment. This range was the result of grouping the three manslaughter counts under the sentencing guidelines. *See* USSG § 3D1.2.

Prior to the sentencing hearing, the district court sent a letter to Lone Fight and the government to provide notice that the court might impose consecutive sentences for the three counts. The letter stated that the court had reviewed this court's decision in *United States v. Kreitinger*, 576 F.3d 500 (8th Cir. 2009), as well as the PSR and letters and statements from Lone Fight's supporters and from the victims' family. A sentence between 77 and 96 months' imprisonment, according to the district court, was "minimal in light of [Lone Fight's] extensive criminal history which culminated in this tragic accident" and the deaths of three individuals. Because of Lone Fight's criminal history, the court saw "a significant risk that [Lone Fight] will reoffend and commit another alcohol-related offense."

At Lone Fight's sentencing hearing, the parties did not dispute the calculation of the advisory guideline range recommended by the PSR. Consistent with its pledge in the plea agreement, the government recommended concurrent sentences of 96 months' imprisonment, the top of the advisory range. Lone Fight argued that concurrent sentences constituted adequate punishment, citing the abuse that he had suffered as a youth, his physical and mental impairments, and the need to avoid a sentencing disparity as compared to another recent federal defendant who had been sentenced for a similar offense.

After adopting the advisory guideline range of 77 to 96 months' imprisonment, the district court explained that it was required to decide whether Lone Fight's sentences on each count should run concurrently or consecutively. Before announcing its decision, the court indicated that it had "carefully reviewed the sentencing guidelines and particularly Section 5G1.2," and that it had also reviewed *Kreitinger*, which the court said "addresses the subject of when and under what circumstances consecutive sentences may be warranted." The court concluded that consecutive sentences were warranted, noting that Lone Fight's conduct caused the deaths of three individuals, that his criminal record included more than forty alcohol-related offenses, and that he violated the terms of his pretrial release by consuming alcohol. In addition, the court explained:

> When I look at factors that I'm required to consider, I need to do something to protect the public. I need to deter criminal conduct. I need to do something that reflects the seriousness of this offense and promotes respect for the law and provides just punishment. Certainly there's going to be people who will criticize me and claim that this is a gross disparity from sentences for [other] people that commit manslaughter offenses. I, quite frankly, can't remember a case involving the history of a defendant like yours where three innocent individuals were killed on the roadways of North Dakota.

So I am aware of my discretion and authority to adhere to the guidelines, to depart from the guidelines, but in this case I firmly believe that consecutive sentences are warranted and reasonable and will address each and every one of those 3553(a) factors that I need to address.

The court imposed sentences of 77 months' imprisonment for each count, to be served consecutively, for a total of 231 months' imprisonment.

Lone Fight argues that the district court erred by imposing consecutive sentences. According to Lone Fight, the district court's comments at sentencing show that it imposed consecutive sentences pursuant to USSG § 5G1.2. He argues that the court misapplied § 5G1.2 and committed procedural error. Section 5G1.2 states that sentences for multiple counts of conviction are to run concurrently "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment." USSG § 5G1.2(c). "Total punishment" means "the precise sentence determined by the sentencing judge from within the appropriate guidelines range." *United States v. Ervasti*, 201 F.3d 1029, 1045-46 (8th Cir. 2000). Lone Fight contends that because the advisory guideline range of 77-96 months' imprisonment does not exceed the statutory maximum sentence of 96 months for each count, there was no basis under § 5G1.2 to run the sentences consecutively. *See* USSG § 5G1.2(c); *United States v. Rutherford*, 599 F.3d 817, 820 (8th Cir. 2010).

Although we agree with Lone Fight that USSG § 5G1.2 does not call for consecutive sentences in this case, the advisory guidelines are not the exclusive basis for imposing consecutive sentences for multiple counts of conviction. Even if the guidelines do not recommend that sentences run consecutively, the district court has broad statutory authority, pursuant to 18 U.S.C. § 3584, to impose consecutive terms. *United States v. Jarvis*, 606 F.3d 552, 554 (8th Cir. 2010); *Rutherford*, 599 F.3d at 820-21. Under § 3584, "[m]ultiple terms of imprisonment imposed at the same time run concurrently *unless the court orders* or the statute mandates *that the terms are to run consecutively*." 18 U.S.C. § 3584(a) (emphasis added). To determine whether

sentences should run consecutively or concurrently, the district court "shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b).

The record shows that the district court imposed consecutive sentences in this case based on the § 3553(a) factors. In the letter sent to the parties prior to the sentencing hearing, the court explained that consecutive sentences may be warranted for each count on the basis of the "three deaths that resulted" from the collision, Lone Fight's "extensive criminal history," and the "significant risk that [Lone Fight] will reoffend and commit another alcohol-related offense." These are all relevant considerations under § 3553(a). *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C). The letter did not mention USSG § 5G1.2. The letter also stated that the court arrived at its tentative decision to impose consecutive sentences after reviewing *Kreitinger*, a case that addresses the reasonableness of consecutive sentences and does not discuss USSG § 5G1.2. 576 F.3d at 504-05.

Lone Fight points to the district court's statement at the sentencing hearing that it had "reviewed" USSG § 5G1.2, but the court was *required* to consider that section to calculate Lone Fight's *advisory* guideline sentence. *Jarvis*, 606 F.3d at 554; *Rutherford*, 599 F.3d at 821. We interpret the court's explanation to mean that after considering § 5G1.2, the court decided nonetheless to impose consecutive sentences based on the § 3553(a) factors. The court explained that consecutive sentences "would account for the seriousness of [Lone Fight's] criminal conduct" and the "very serious likelihood that [Lone Fight] will reoffend." Before imposing the sentence, the court stated that "consecutive sentences are warranted and reasonable and will address each and every one of those 3553(a) factors that I need to address." Although the court did not expressly cite 18 U.S.C. § 3584 as the statutory basis for its action, the court properly followed the direction of § 3584(b) to consider the factors set forth in § 3553(a) in determining whether to impose consecutive sentences. *See Rutherford*, 599 F.3d at 822.

Applying a deferential abuse-of-discretion standard of review, we conclude that the court's decision to impose consecutive sentences and a term of 231 months' imprisonment was not substantively unreasonable. Lone Fight's criminal history stretches over thirty years, and many of his dozens of prior offenses are alcohol-related. His alcohol-fueled conduct caused the deaths of three individuals, including two children. In light of that history, the district court reasonably concluded that a lengthy term of incarceration was necessary to protect the public, and that concurrent sentences within the advisory guideline range did not adequately reflect the seriousness of Lone Fight's offenses.

The judgment of the district court is affirmed.

_____