# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2263

_____

United States of America,

    Appellee,

  v.

David Mills Becker,

    Appellant.

\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of North Dakota.
\*
\*
\*

_____

Submitted: February 15, 2011
Filed: April 11, 2011 (corrected 4/15/11)

_____

Before RILEY, Chief Judge, WOLLMAN, Circuit Judge, and KYLE,[1] District Judge.

_____

KYLE, District Judge.

David Becker appeals his sentence of 210 months in prison for sexual exploitation of his minor daughter. He argues that the district court[2] (1) violated Federal Rule of Criminal Procedure 32 by relying upon undisclosed information

_____

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

about the North Dakota Board of Parole in fashioning its sentence, and (2) failed to consider the requirements of Sentencing Guideline § 5G1.3(b). We find no merit to either contention and, accordingly, affirm.

## I.     FACTUAL BACKGROUND

In November 2008, Becker's biological son (M.B.) and daughter (T.B.) disclosed ongoing sexual abuse by their father, which had begun when they were eleven and nine years old, respectively. The incidents of sexual abuse were numerous and included oral, anal, and vaginal intercourse. During their investigation, state law-enforcement officers executed a warrant and seized a computer from Becker. Three images discovered on this computer depicted a pubescent minor female with her vagina and anus exposed; two of the images also showed a man's hand on or near the girl's body. T.B. confirmed that the photographs were of her, taken by her father when she was 13 or 14 years old, and the male hand was his.

Before any federal charges were filed, Becker pled guilty in North Dakota state court to two counts of continuous sexual abuse of minors (one count for each child). In June 2009, the state court sentenced him to two concurrent 30-year terms of imprisonment, with five years suspended. Subsequently, as a result of the images of T.B. discovered during the state investigation, Becker was indicted for two federal crimes in October 2009: (1) sexual exploitation of a minor, and (2) possession of materials involving the sexual exploitation of a minor. He pled guilty to Count I, the sexual-exploitation charge, in February 2010. The Plea Agreement set forth the following factual basis:

> [B]eginning in April 2003, through November 2008 the defendant, a
> parent having custody and control of T.B. a minor knowingly
> permitted T.B. to engage in sexually explicit conduct for the purpose

of producing visual depictions of such conduct produced using materials that had been mailed, shipped, and transported in interstate commerce by any means, including by computer.

The district court accepted Becker's guilty plea to Count I and ordered a presentence report (PSR).

At sentencing, the court adopted the guidelines range of 168 to 210 months calculated in the PSR. There was no objection to this calculation or to any of the PSR's contents. C.B., the victims' mother and Becker's ex-wife, spoke to the court about the effects of the abuse and expressly requested that Becker's sentence run consecutive to his state sentence. The Government also recommended a consecutive sentence and asked for 180 months, the statutory mandatory minimum. Becker sought a 180-month sentence as well, but he asked that it be concurrent with his state sentence (which he had already been serving for 11 months at the time of his sentencing on the federal crime). Noting that it found Becker's conduct "egregious" and "disturbing," the district court imposed a 210-month sentence and ordered that it run consecutive to his state sentence. Becker now appeals.

## II. DISCUSSION

### A. Rule 32 Violation

Becker first argues that the district court violated Federal Rule of Criminal Procedure 32 by considering undisclosed information from the judge's prior service on the North Dakota Board of Parole. Since Becker did not object before the district court, his claim is reviewed for plain error. See United States v. Molnar, 590 F.3d 912, 915 (8th Cir. 2010). Accordingly, he must show "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Lovelace, 565 F.3d 1080, 1090 (8th Cir. 2009). Further, plain-error review requires Becker

to show that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citations omitted).

Rule 32 sets forth a defendant's right to "have access to the material on which the court will base its sentencing decision and an opportunity to respond to information that is prejudicial to [his] cause." United States v. Foster, 575 F.3d 861, 863 (8th Cir. 2009). Becker was unaware of the district judge's personal knowledge about the state prison system and its parole decisions prior to sentencing; thus, he claims Rule 32 was violated.

Becker identifies the following statements by the district court in support of his argument. First, while discussing the various sentencing considerations, it contemplated what might happen within the state system, stating:

> Well, I served on the parole board a number of years and I know how they operate. Conditions are extremely crowded at the North Dakota State Penitentiary right now, and so when conditions are crowded, the trend is to get people out of there quickly, if possible. And if they're subject to a federal sentence, the trend is to release them early to their federal sentence so they get off the state system and into the federal system, saving the state considerable money and opening up bed space.

In response to the court, both the Government and Becker conceded that early parole on the state sentence was possible. Later, when imposing Becker's sentence, the court also commented:

> My concern in this case is that you're going to be released from the state system early. I know how the system operates. I was on the parole board. I know what the mind set of the Department of Corrections is when they're faced with individuals such as yourself, who have got a long state sentence and a long federal sentence.

> That's the great unknown, if you're going to be released or not, but regardless of whether you would be released early by the state system to serve your federal sentence or not, I would reach the same conclusion. This was a rather egregious offense and to me very disturbing behavior that I've read about.

Although not raised at the time of sentencing, Becker now argues it was improper for the district court to consider this information about parole decisions. The Government does not dispute that Becker was unaware of this information prior to sentencing. However, it argues the court's comments about what might happen in the state system were merely an academic discussion and did not ultimately affect its sentencing decision. We agree and find no plain error.

Becker relies heavily on this Court's 2009 decision in Lovelace, in which the defendant similarly argued that the district court violated Rule 32 by relying on undisclosed information at sentencing. 565 F.3d at 1088–89. The challenge in Lovelace, however, differed greatly from this case. There, the undisclosed information was knowledge of a previous incident involving the defendant which the district judge acquired while working as a city prosecutor, and the court discussed the incident and its impact on individual victims at length during sentencing. Id. at 1089. The court's use of this outside information was akin to relying on undisclosed victim letters. Id. (discussing United States v. Hayes, 171 F.3d 389, 391–95 (6th Cir. 1999)). On the other hand, the comments Becker challenges here were much less extensive than those in Lovelace, and the district court had no prior knowledge of Becker. Personal knowledge of a defendant's prior criminal conduct and its impact on victims, like undisclosed victim letters, differs substantially from general knowledge about the prison system.

Furthermore, even if Becker could show that the district court committed error that was plain, his claim would fail under the third step of the plain-error test. Step three requires Becker to show a "reasonable probability, based on the

appellate record as a whole, that but for the error he would have received a more favorable sentence." Lovelace, 565 F.3d at 1092 (quoting United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005)). He cannot do so here. The district court acknowledged that whether Becker would be paroled early on his state sentence was "a great unknown" and explicitly noted this was *not* a consideration in its sentencing decision. The court advised Becker: "[R]egardless of whether you would be released early by the state system to serve your federal sentence or not, *I would reach the same conclusion. This was a rather egregious offense and to me very disturbing behavior that I've read about.*" (emphasis added). It was motivated to impose the sentence it did because of the severity and nature of Becker's offense. In short, Becker cannot show a reasonable probability that he would have received a more favorable sentence than 210 months.

## B.    Failure to apply Guideline § 5G1.3(b)

Becker next argues that his sentence failed to comply with Sentencing Guideline § 5G1.3(b) in two respects: first, he was not given credit for eleven months already served on his state convictions; and second, his sentence should have run concurrent with, rather than consecutive to, his state sentence. Generally, a district court's sentencing decisions are reviewed for abuse of discretion. United States v. Rutherford, 599 F.3d 817, 820 (8th Cir. 2010) (citing Gall v. United States, 552 U.S. 38, 46 (2007)). Becker argues, however, that *de novo* review should apply because he is asking the Court to review the district court's interpretation of the Sentencing Guidelines. Regardless how the claim is reviewed, § 5G1.3(b) does not apply here.

Section 5G1.3(b) of the Sentencing Guidelines provides that credit should be given for time served and that sentences should run concurrently when a defendant is subject to a prior, undischarged sentence. However, subsection (b) applies only where a defendant is subject to an undischarged term of imprisonment for another

offense that is "relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense." U.S. Sentencing Guidelines Manual § 5G1.3(b) (2010). Further, it was intended to apply only if "all of the prior offense . . . is relevant conduct to the instant offense." Id. § 5G1.3, cmt. n.2(A) (emphasis added). "Cases in which only part of the prior offense is relevant conduct to the instant offense are covered under subsection (c) [of § 5G1.3]." Id. Here, subsection (b) is not applicable given the nature of Becker's state convictions. His state sentence arose from *two* offenses—one for sexual abuse related to M.B. and the other to T.B.—while the federal indictment was only for the sexual exploitation of T.B. based on the photographs. The offense-level enhancement used in calculating the guidelines range for Becker's federal sentence was solely for his sexual contact with T.B., as indicated in the PSR. Thus, the state conviction and sentence resulting from Becker's sexual abuse of M.B. was wholly separate from any of the conduct underlying his federal conviction.

When a defendant has an undischarged sentence for offenses that are not relevant or only partially relevant to the instant offense, subsection (c) of § 5G1.3 applies rather than subsection (b). Pursuant to § 5G1.3(c), "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Thus, the Guidelines specifically recognize that a consecutive sentence may be appropriate for a defendant in Becker's position, and they do not require credit for time served on an irrelevant or partially relevant offense.

Moreover, regardless of the Sentencing Guidelines' provisions,[3] Becker's consecutive sentence is also consistent with 18 U.S.C. § 3584. See United States v. Lone Fight, 625 F.3d 523, 525 (8th Cir. 2010) ("Even if the guidelines do not recommend that sentences run consecutively, the district court has broad authority, pursuant to 18 U.S.C. § 3584, to impose consecutive terms."). Section 3584 provides:

> (a) Imposition of concurrent or consecutive terms. -- . . . if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run *concurrently or consecutively*. . . . Multiple terms of imprisonment imposed at different times *run consecutively unless the court orders that the terms are to run concurrently*.
>
> (b) Factors to be considered in imposing concurrent or consecutive terms. -- The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

18 U.S.C. § 3584 (emphasis added). Under this statute, a district court has the discretion to impose a sentence concurrently or consecutively based on the same § 3553(a) factors as other sentencing decisions.

The district court here did what was required of it in fashioning a reasonable sentence for Becker and determining whether it should be consecutive. It first calculated the applicable guidelines range, and neither side objected to the calculation or made any motion for a departure. It indicated that it had considered

---

[3] Becker argues that Guideline § 5G1.3 is binding here. He relies on Dillon v. United States, 130 S. Ct. 2683 (2010), in which the Supreme Court held that Guideline § 1B1.10 remains binding. It is not necessary to reach this argument, however. Even if the Guideline at issue were treated as binding, the subsection applicable here—(c), rather than (b)—does not mandate a concurrent sentence.

the sentencing factors set forth in § 3553(a), noting it did not need to recite each factor on the record where the sentence was within the guidelines range. E.g., United States v. Austad, 519 F.3d 431, 436 (8th Cir. 2008) ("[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered."). After hearing from counsel, the defendant, and C.B., the district court determined that a 210-month sentence (the top of the range) was appropriate, and that it should run consecutive to Becker's state sentence, as requested by both the government and C.B. In Rutherford, this Court noted that "the district court could have more clearly articulated the correct authority for the imposition of consecutive sentences. In fact, the court completely omitted a discussion of § 3584 in making its sentencing decision. Yet, the § 3553(a) factors were properly considered, as required by § 3584." 599 F.3d at 822. The same is true here.

## III.   CONCLUSION

For all the foregoing reasons, we affirm Becker's sentence.

_____