# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2365

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Asa Winters, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: February 13, 2012
Filed: July 12, 2012

_____

Before WOLLMAN, ARNOLD, and SMITH, Circuit Judges.

_____

PER CURIAM.

Asa Winters pleaded guilty to one count of being an unlawful drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The district court[1] sentenced Winters to 120 months' imprisonment to run consecutively to his state bank robbery sentence and imposed three years' supervised release upon completion of his sentence. Winters appeals his sentence as unreasonable. We affirm.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I. *Background*

On December 31, 2009, police were dispatched to City Liquor and Tobacco in Waterloo, Iowa, after they received a report that a person inside the store may have been involved in a December 23, 2009 robbery of the store. When they arrived, officers found a vehicle parked in front of the store with the passenger-side doors facing the store. According to the presentence investigation report (PSR), Baron Booker was "sitting on the driver's side rear passenger seat of the vehicle," and Najuan Decatur and Winters were walking toward the vehicle. When an officer approached Winters, he "began to walk away and complained that the officer was harassing him." During a pat-down search of Winters, "[t]he officer located a loaded Hi-Point Model C9 9mm handgun with an obliterated serial number and a user quantity of marijuana." Police found "a Hi-Point .380 caliber handgun with an obliterated serial number on the floorboard near the front passenger seat of the vehicle," as well as "black pants, two knit stocking hats, a black partial face mask, and blue latex gloves in the rear cargo area of the vehicle."

During an interview with police, Winters "admitted to officers that the marijuana found on his person was his and that he was a marijuana smoker." Winters told police that he found the 9mm handgun in the glove box of the vehicle while he, Decatur, and Booker were on their way to the store to buy liquor and that Booker said that the gun was to "shoot up in the air because it was New Year's Eve." (Quotations omitted.) Winters admitted that he had carried the gun into the liquor store.

A grand jury indicted Winters on one count of being an unlawful drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Winters pleaded guilty before a magistrate judge, and the district court accepted his guilty plea. Prior to sentencing, the United States Probation Office prepared a PSR, which calculated Winters's base offense level at 14, added a four-level enhancement because the firearm had an altered or obliterated serial number, and reduced the offense by three levels for acceptance of responsibility, resulting in a total offense level of 15.

The PSR also assigned Winters three criminal history points for a first-degree robbery conviction in state court for robbing City Liquor and Tobacco on December 23, 2009, with Decatur and Booker, resulting in a criminal history category of II. State trial records alleged that during the robbery, Winters "pointed [a] handgun at a store clerk and told the clerk to open the cash register. [Winters] and Booker took the money and all three ran out of the store. They later split the money." The PSR also noted that three charges were still pending against Winters, one of which was for robbing the East Fourth Street Liquor Store in Waterloo, Iowa, on December 29, 2009. According to the PSR, during that robbery, "Booker (while brandishing a handgun and wearing a partial face mask and blue latex gloves) . . . entered the liquor store," "confronted a store clerk near the cash register," and "shot the clerk." Winters "while brandishing a long gun and wearing dark clothing," also "entered the liquor store" and "pointed the shotgun at another clerk, cocked the shotgun, and told the clerk to remain lying face down on the floor during the robbery." The PSR reported that "Booker and Decatur later admitted to their involvement and to [Winters's] involvement in the robbery." According to the PSR, the advisory Guidelines range for Winters's sentence was 21 to 27 months' imprisonment.

The government made a number of objections to the PSR. First, the government argued that an offense level of 25 instead of 15 was appropriate pursuant to U.S.S.G. § 2K2.1(c)(1)(A). The government indicated that police interdicted the robbery conspiracy between Winters, Booker, and Decatur just before the second attempt to rob City Liquor and Tobacco on December 31, 2009, and that Winters's handgun could have helped them commit that robbery. In the alternative, the government argued that a four-level increase to the offense level would be appropriate under U.S.S.G. § 2K2.1(b)(6) because Winters used or possessed a firearm during the December 29, 2009 robbery. Second, the government contended that the district court should not reduce Winters's offense level for acceptance of responsibility because he denied involvement in the December 23, 2009 robbery and

the alleged attempted robbery on December 31, 2009. Finally, the government sought an upward departure or variance from the Guidelines range "based upon un-scored criminal history, factors not taken into account by the [G]uidelines, and the need to impose a sentence that takes into consideration the factors set out in 18 U.S.C. § 3553."

At sentencing, the government again raised its objections to the PSR and stated that, "depending upon the Court's ruling on those adjustments, we likely have a motion for upward departure or variance as well based upon unscored criminal history and the [§] 3553(a) factors." The government also argued that Winters should serve his federal sentence consecutive to the state sentence he was serving for robbery. Winters's counsel responded that "the probation office did a good job of scoring this and that the evidence is just not clear, nor can it be found with reasonable certainty that all these crimes were connected and that Mr. Winters should be held accountable for all the relevant conduct." Winters's counsel also asked that the sentence imposed by the district court run concurrent to the state-court sentence for robbery.

After a brief recess, the district court determined by a preponderance of the evidence that Winters was involved in the December 23 and December 29, 2009 robberies. The district court also found "those robberies [to be] relevant conduct to the charged offense to which [Winters] pled guilty." The court determined that Winters's offense level was 25 because Winters was "assisting in casing the [store]" on December 31, 2009. The court "d[id] not score acceptance of responsibility because . . . [Winters] ha[d] not accepted fully his responsibility for relevant conduct." The court adjusted Winters's criminal history, affording him "no points . . . for the robbery because it's relevant conduct to the charged offense." This resulted in a criminal history category of I and an advisory Guidelines range of 57 to 71 months' imprisonment. Although the district court found that U.S.S.G. § 5G1.3 "require[d] the Court to run the sentence concurrent to the undischarged term of

imprisonment," the court decided to "vary upward" "to reflect the seriousness of the offense, promote respect for the law, provide just punishment, [and] protect the public from further crimes of the defendant." The district court sentenced Winters to 120 months' imprisonment, the statutory maximum, "to run consecutively to the remainder of the undischarged term of imprisonment imposed" in state court, followed by three years' supervised release.

## II. *Discussion*

On appeal, Winters argues that the district court abused its discretion by imposing a sentence of 120 months' imprisonment to run consecutively to his state sentence. To determine whether the district court abused its discretion, "'[w]e must first ensure that the district court committed no significant procedural error,'" such as "'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If we determine that the district court committed no procedural error, then we consider the substantive reasonableness of the sentence imposed, "'tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *Id.* (quoting *Gall*, 552 U.S. at 51).

## A. *Sentencing Procedure*

Winters alleges that the district court committed procedural error by (1) imposing a term of imprisonment to run consecutively to his state court sentence and (2) failing to adequately explain its bases for a substantial upward variance.

## 1. *Consecutive Sentences*

First, Winters argues that the district court abused its discretion by imposing a sentence to run consecutively to his state sentence for robbery because the Guidelines instruct the district court to impose the sentence to run concurrently to his state sentence. Winters cites to U.S.S.G. § 5G1.3(b), which states:

> [if] a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense . . . , the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment . . . ; and
> >
> > (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

Winter pointed out that "'§ 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence.'" *United States v. Heard*, 359 F.3d 544, 550 (D.C. Cir. 2004) (quoting *Witte v. United States*, 515 U.S. 389, 405 (1995)).

As the government notes in its brief, however, "the sentencing guidelines are no longer a mandatory regime." *United States v. Shafer*, 438 F.3d 1225, 1227 (8th Cir. 2006). Here, the district court correctly calculated Winters's Guidelines range and noted that § 5G1.3(b) applied. But the district court explained that, after reviewing the § 3553(a) factors, it had decided to disregard § 5G1.3 and vary upward. In imposing its sentence, "[t]he court thus did not fail to consider § 5G1.3(b)[] in its guidelines calculations or in fashioning its ultimate sentence; it simply determined that, in light of all of the § 3553(a) factors, a variance from the guidelines was

appropriate." *United States v. Carter*, 652 F.3d 894, 897 (8th Cir. 2011). Because the district court properly considered the Guidelines, it did not abuse its discretion in imposing consecutive sentences. *United States v. Fight*, 625 F.3d 523, 525 (8th Cir. 2010) ("Even if the guidelines do not recommend that sentences run consecutively, the district court has broad statutory authority, pursuant to 18 U.S.C. § 3584, to impose consecutive terms.").

## 2. *Explanation of Upward Variance*

Second, Winters alleges that the district court abused its discretion by failing to explain its bases for the upward variance. "The appropriateness of a district court's sentencing explanations 'depends upon circumstances.'" *United States v. Thunder*, 553 F.3d 605, 608 (8th Cir. 2009) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). The district court is not required "to mechanically list every § 3553(a) consideration when sentencing a defendant." *Id.* (quotation and citation omitted). "Instead, evidence that the district court was aware of the relevant § 3553(a) factors required to be considered is sufficient, and this evidence can be inferred from the record." *Id.* (quotations, alteration, and citation omitted).

Here, the district court received eight police reports attached to the government's sentencing memorandum, all of which pertained to the December 23 and December 29, 2009 robberies and the alleged attempted robbery on December 31, 2009. Several of the reports described interviews with Booker and Decatur, who told police that Winters was involved in the robberies on December 23 and December 29, 2009, and brandished a gun in both robberies. One report described a photographic lineup given to the owner of City Liquor and Tobacco, who identified Winters as one of the men who had robbed his store on December 23, 2009. In other reports, police described Winters's suspicious behavior at City Liquor and Tobacco on December 31, 2009, prior to his arrest.

Based on this evidence, the district court determined that Winters had been involved in two prior robberies, one of which involved the shooting of a store clerk. The court also found by a preponderance of the evidence that Winters and his co-conspirators were "casing the place" for another robbery on the date of their arrest. In light of this evidence, and "after carefully reviewing all of the statutory factors at 18 [U.S.C. §] 3553(a)," the district court determined that an upward variance was warranted. The court explained:

> [T]he basis of the upward departure is the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, [and] protect the public from further crimes of the defendant. The sentence I impose will totally disregard [§] 5G1.3 and the guideline calculation, and I will be giving him the maximum statutory penalty of 120 months.

In light of the circumstances of this case, this explanation was adequate and does not constitute an abuse of discretion. *See United States v. Richart*, 662 F.3d 1037, 1051 (8th Cir. 2011) (finding the district court's decision to vary upward to the statutory maximum and run the two sentences consecutive to each other was not an abuse of discretion when "[t]he district court correctly calculated the advisory guideline range, properly considered the § 3553(a) factors, selected a . . . sentence based on factual findings that were not clearly erroneous, and adequately explained the chosen sentence").

### B. *Substantive Reasonableness*

Although not expressly, Winters argues that a ten-year sentence for possession of a firearm to run consecutive to his state sentence is substantively unreasonable. "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster*, 572 F.3d at 464.

In this case, the court was presented with evidence that Winters, Booker, and Decatur had gone on a robbery spree: within eight days, they had committed two armed robberies at two separate liquor stores, had returned to the first liquor store, and were "casing the place" for a third robbery at the time they were arrested. During one of the robberies, a store clerk was shot. In light of this very dangerous conspiracy in which Winters was a co-conspirator, and for which he refused to accept responsibility, the district court found it necessary to apply the statutory maximum sentence for Winters's illegal-weapon possession offense. Doing so was not an abuse of discretion. *See United States v. Neuzil*, 405 F. App'x 80, 81 (8th Cir. 2010) (unpublished per curiam) (finding that a district court did not abuse its discretion by sentencing the defendant to the statutory maximum of 120 months' imprisonment for possession of unregistered firearms when the defendant "repeatedly threatened his wife and her family," exhibited a "fascination with firearms," "ha[d] a tendency to use alcohol to excess," and "failed to show genuine remorse for his unlawful actions").

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____