# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 10-2272/2399
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant/Cross-Appellee, | * |
| | * |
| v. | * |
| | * |
| Debra Palmer, | * |
| | * |
| Appellee/Cross-Appellant. | * |

_____

Nos. 10-2724/2824
_____

| | | |
|---|---|---|
| United States of America, | * | Appeals from the United States District Court for the Western District of Missouri. |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Todd B. Barkau, | * | |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: May 13, 2011
Filed: July 1, 2011

_____

Before RILEY, Chief Judge, SMITH, Circuit Judge, and STROM,[1] District Judge.
_____

RILEY, Chief Judge.

Debra Palmer and Todd Barkau (collectively, defendants) operated an illicit bondage domination sadism masochism (BDSM) business. The defendants trained Palmer's 12-year-old daughter (child or victim) to become a dominatrix. When the child was 14 years old, defendants sold the girl's services to customers on the internet using webcam sessions and in-person sessions. After the defendants pled guilty to commercial sex trafficking of a child, the district court ordered the defendants to pay $200,000 in restitution to cover the child's future mental health expenses. The government appeals, and both defendants appeal. We affirm in part and reverse in part.

## I. BACKGROUND

### A. Defendants' Crimes

Barkau, Palmer, and the child lived in the same home. In 2000, when the child was 12 years old, Palmer helped Barkau train the child to become a dominatrix. Palmer also allowed Barkau to engage in sexual intercourse and BDSM activities with her daughter.

In 2002, Barkau created an illicit BDSM business, advertising the child as "Mistress Alisha" on a website.[2] For approximately two years, Barkau sold the child's services to men for online and in-person BDSM activities—including bondage,

---

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

[2]Palmer suggested the "Mistress Alisha" moniker because "Alisha" was Palmer's pseudonym when she was a stripper.

beatings, burnings, and genital mutilations. Barkau earned as much as $80,000 from the business.

## B.     Prior Proceedings

In September 2009, the defendants each pled guilty, pursuant to a binding plea agreement with the government, to one count of commercial sex trafficking of a child, a violation of 18 U.S.C. § 1591 and § 2. <u>See</u> Fed. R. Crim. P. 11(c)(1)(C). The parties agreed Palmer and Barkau would receive 15- and 25-year terms of imprisonment, respectively, and pay restitution to the child.

### 1.     Palmer's Sentencing

In May 2010, the district court accepted the parties' agreement and sentenced Palmer to 15 years imprisonment, a substantial downward variance from her advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range of life in prison. The dispute at Palmer's sentencing hearing was the amount of restitution owed to the child.

The government presented the district court with expert testimony from Gerald K. Gentry, Ph.D., a clinical child psychologist. Dr. Gentry estimated the child would incur over $1 million in treatment costs over the course of her lifetime as a result of the defendants' actions—approximately $200,000 in psychotherapy and $800,000 for psychiatry and medication.

Dr. Gentry testified he treated over 200 victims of child sexual abuse in his 30-year career. Dr. Gentry characterized the child's sexual abuse as "one of the two or three most egregious cases that I've been involved with." Dr. Gentry concluded the child would incur $1 million in treatment because (1) the abuse was especially severe, involving "torture and humiliation" and "all kinds of sexual perversion and degradation"; (2) the abuse began when the child was only twelve and lasted for five years; and (3) the abuse resulted in an egregious "destruction of trust," as "the

victim's mother was directly involved in the decision to move ahead with the abuse." On that basis, the government asked the district court to order Palmer, jointly and severally with Barkau, to pay the full $1 million in restitution.

Palmer stipulated to Dr. Gentry's qualifications, but objected to the amount of the government's restitution request. Palmer averred, "although . . . there's a good possibility counseling expenses will be incurred in the future, . . . [there is not] an adequate foundation for this court to determine whether it's a million dollars or two million dollars or five thousand dollars." On cross-examination, Dr. Gentry conceded he never interviewed the child; "every individual is different"; and he did not know the child's present emotional condition or whether she used medications or abused alcohol or narcotics. Palmer opined Dr. Gentry lacked sufficient information to estimate the child's future expenses, but conceded the district court could "structure an order whereby restitution will be determined as needed as those expenses are incurred."

The government rejoined, explaining Palmer had not offered any alternative calculation of the child's future expenses. Dr. Gentry insisted "the facts speak for themselves" and an interview might "retraumatiz[e] the victim by delving into the details and bringing up all the memories." The government stressed Dr. Gentry was conservatively estimating the child's future treatment costs, not diagnosing the child with an illness. Describing his projection as a "median" cost for a victim of similar sexual abuse, Dr. Gentry insisted he was "confident in [his] projections." The government expressed concern about Palmer's proposed "special condition" of restitution as needed, because that was "never how it's worked in the past"; the government was "not sure there is a practical way to have it work in that format"; and the special condition would result in the victim having "to come up with the money to . . . pay for the counseling upfront, and that's why [presently] she can't get the counseling."

-4-

The child, now a young adult in need of treatment, spoke at the hearing and indicated she had attended counseling with state assistance but, having exhausted all available funding, was no longer able to pay the requisite $180 for each counseling session.[3] The victim stated she "want[ed] to go to counseling more than anything, but [she] can't afford it." The victim said she recently lost her job, explaining, "I feel unable to continue in that career track, or any track at all, for that matter, the main reason being that I have so many emotional issues that small situations in my job make me so overwhelmed with flashbacks that I'm unable to continue working." The victim reported she suffers from depression, anxiety, flashbacks, paranoia, migraine headaches, and seizures. Crying, the victim lamented she lacked a family support system, in part, because her mother participated in her abuse. The child concluded, "[N]othing . . . is going to get any easier until I'm able to get some help."

The district court granted in part and denied in part the government's restitution request, requiring Palmer to pay $200,000 in restitution jointly and severally with Barkau. The court ordered, "A lump sum payment of the full amount is ordered due immediately." In light of Palmer's indigency, the district court directed Palmer to make quarterly payments of $25, or at least 10% of her earnings, whichever is greater, while incarcerated. After her release, Palmer must make quarterly payments of $100, or 10% of her gross income, whichever is greater. The district court then added Palmer's requested special condition, "requir[ing] [Palmer] to make the payments into an account until that account reaches $5,000. Thereafter, [Palmer] is to maintain the account at $5,000 so that counseling expenses actually incurred can be paid from the account for the victim."

In discussing the denial of more than $800,000 of the government's restitution request, the district court remarked:

---

[3]Dr. Gentry's estimate was based upon a lower $175 per hour rate without any allowance for inflation over the course of the victim's life.

[T]he problem with the evidence is that it is very speculative. And I'm not calling into question at all the expert's credentials, but the record on which his decision was based is very speculative.

He did not, in fact, talk to this particular individual, and victims vary widely as to . . . what resiliency they have. And . . . that's something that precludes me from accepting as true everything that the expert has said in terms of the amount of services that would be required.

The district court justified its $200,000 restitution award, stating:

[T]here is no question that there is going to be a need for psychiatric—not psychiatric, but psychological services, and I think that the victim has made that clear, as well. But $200,000 ensures that all of even the expert's suggestions concerning 30 years of psychological services will be covered . . . . I think it is purely speculative that there will be . . . $800,000 in medications and hospitalizations. I just don't think that's going to happen. But I don't know one way or the other because I have no basis for looking at this particular individual and seeing how she is going to respond to these circumstances. $200,000 I think . . . is a realistic number for compensating the victim for counseling services, and what I've done is also try to take into account [Palmer's] concerns.

Discussing the special condition, the district court observed:

[T]hese payments will come into a fund and as the services are incurred, payments then will be made for those services and the defendant has to keep that fund at at least . . . $5,000. And . . . if the defendant ever pays $5,000, I'll be surprised, but the fact is there has to be at least $5,000 always in that account up to $200,000 over the lifetime of the defendant.

The government did not object to the special condition. The government appealed, and Palmer cross-appealed.

### 2.	Barkau's Sentencing

In July 2010, the district court sentenced Barkau to 25 years of imprisonment (a downward variance from his Guidelines range of 324 to 405 months imprisonment).[4]  With respect to restitution, the parties agreed to incorporate the record of Palmer's sentencing into Barkau's case.  Noticing the government had appealed the restitution special condition in Palmer's case, the district court stated, "my concern is that if, in fact, that's error to do it that way, then based on the record I would not enter any restitution order because I felt there was not sufficient evidence from the expert who had never examined the person, the victim in this case."  The government objected to "the new finding about insufficient evidence if that alternative restitution order had to be in place."

Over the government's objection, the district court imposed a restitution order in Barkau's case in all relevant respects identical to Palmer's restitution order.  The district court explained:

> As to the restitution order, my alternative judgment is that I would not impose restitution if, in fact, my order is not proper because I felt that there was insufficient evidence to show, in fact, what counseling was needed and that it was going to be pure speculation.

---

[4]Barkau's Presentence Investigation Report (PSR) suggested a Guidelines range of life (level 45, category I) based in part on a four-level enhancement for threatening the child into working as a dominatrix.  See U.S.S.G. § 2G2.1(b)(2)(B).  The PSR related the victim "told her mother and Barkau that she wanted to stop her relationship with Barkau and the dominatrix; however, every time she was threatened and scared back into being with Barkau and continuing the dominatrix."  Barkau objected to this allegation, in order to address issues in the Bureau of Prisons concerning a more lenient custody classification.  After the government declined to present any evidence, the district court observed it had "no choice but to . . . sustain the objection" and lowered Barkau's Guidelines range.

So if this order is insufficient, the alternative order would be I would not impose any restitution solely because the record is not sufficient to convince me what is needed.

The government appealed, and Barkau cross-appealed.

## II. DISCUSSION

Restitution is mandatory under the Victims of Trafficking and Violence Protection Act of 2000, as amended (TVPA), 18 U.S.C. § 1593, the Mandatory Victims Restitution Act of 1996, as amended (MVRA), 18 U.S.C. §§ 3663A-3364, and the parties' plea agreements. On the government's appeals, the issues are whether the district court erred in (1) attaching the special conditions[5] and, if so, (2) issuing its alternative restitution orders. On the defendants' cross-appeals, the issue is whether the district court erred in fixing the child's restitution award at $200,000.

### A. Government's Appeals
### 1. Standards of Review

We ordinarily would review the district court's special conditions de novo. See United States v. Mancini, 624 F.3d 879, 882 (8th Cir. 2010). In Palmer's case, we review the special condition for plain error because the government failed to object to the special condition at her sentencing. See United States v. Becker, 636 F.3d 402, 405 (8th Cir. 2011). To show plain error, the government must establish

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [the government's] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously

---

[5]The government contends its appeals of the special conditions are ripe notwithstanding the district court's doubts about the defendants' ability to make more than $5,000 in restitution to the child. We agree. See United States v. Collins, 209 F.3d 1, 2 n.1 (1st Cir. 1999).

affect[s] the fairness, integrity or public reputation of judicial proceedings.

United States v. Marcus, 560 U.S. ___, ___, 130 S. Ct. 2159, 2164 (2010) (quoting Puckett v. United States, 556 U.S. ___, ___, 129 S. Ct. 1423, 1429 (2009) (internal marks omitted)).

### 2. Analysis
#### a. Special Conditions

In relevant part, the MVRA authorizes the district court to "direct the defendant to make . . . partial payments at specified intervals." 18 U.S.C. § 3664(f)(3)(A). When we are able to ascertain the plain meaning of statutory text, we apply that meaning. See United States v. I.L., 614 F.3d 817, 820 (8th Cir. 2010) ("The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'") (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)).

The government essentially argues the district court's special conditions lack "specified intervals" because the defendants' payments are tied to a future contingency and are not set at predetermined moments in time. We agree.

The MVRA does not define "specified intervals," but the plain and unambiguous meaning of the phrase connotes a temporal reach. One dictionary defines "specified" as "[t]hat is or has been definitely or specifically mentioned, determined, fixed, or settled" and "interval" as "[t]he period of time between two events, actions, etc." *Oxford English Dictionary* (Online ed. 2011). The MVRA's requirement of "specified intervals" necessitates preordained dates and may not be conditioned on the occurrence (or non-occurrence) of future events at unknown points in time. Otherwise the interval is not "specified."

As the government argues, the practical effect of the district court's special condition is to "avoid the MVRA's requirement that restitution be mandatory" by "reliev[ing] the defendants from their minimum statutory obligation to make payments at regular intervals toward the entire $200,000 restitution amount." The special condition requires the child to incur out-of-pocket expenses and seek reimbursement each time she needs counseling, which reasonably could deter or discourage her from receiving help.

With regard to Palmer's appeal, the district court's error in imposing the special condition is plain. "Without question, an objection by counsel could have focused the district court on these issues, but a restitution order must reflect an informed judgment consistent with the facts of the case and the law." United States v. Kaydahzinne, 334 F. App'x 144, 150 (10th Cir. 2009). The special condition manifestly violates the law. In our discretion, we elect to afford the government plain error relief in Palmer's case because allowing the special condition in Palmer's case, but not in Barkau's case, would seriously affect the fairness of these judicial proceedings. See Marcus, 560 U.S. at ___, 130 S. Ct. at 2164. See also Weems v. United States, 217 U.S. 349, 362 (1910). Plain error relief here is also consistent with our solemn statutory duty to safeguard the child's "right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6), (b)(1).[6]

### b.    Alternative Restitution Orders

We vacate the district court's alternative restitution orders as unenforceable attempts to impinge on the government's right to appeal. See Bayless v. Estelle, 583 F.2d 730, 733 (5th Cir. 1978) ("The right to appeal any . . . decision of any court is a sacred right that must remain free, open and unfettered and without fear, threats or penalty.") (quotation omitted). As we discuss below, the denial of *all* restitution to

---

[6]It is worth noting the child lacks recourse from the government for its professional negligence. See 18 U.S.C. § 3771(d)(6).

this child, who suffered untold sexual abuse, humiliation, and torture, would be contrary to law and clearly erroneous on this record. The award of restitution is required by law, 18 U.S.C. § 1593 and § 3663A(a)(1), (b)(2), and the evidence in the record sufficiently supports the $200,000 assessment.

### B. Defendants' Cross-Appeals
#### 1. Standards of Review

"We review for clear error the amount of restitution ordered." United States v. Simon, 376 F.3d 806, 809 (8th Cir. 2004). "[W]e take a broad view of what conduct and related loss amounts can be included in calculating loss." United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007). Although predicting future psychological damages is notoriously difficult, the district court was only required to make a reasonable estimate, not establish the victim's future treatment costs with certainty. See United States v. Boesen, 541 F.3d 838, 850-51 (8th Cir. 2008).

#### 2. Analysis

The defendants argue the district court erred in awarding the child any restitution, maintaining Dr. Gentry's estimate of future psychological treatment was too speculative to fix the amount of the child's award at $200,000. The defendants reiterate Dr. Gentry never formally interviewed the child, and then argue each victim of sexual abuse has a different level of resiliency to sexual abuse.

The district court did not clearly err in fixing the amount of the child's restitution at $200,000. Dr. Gentry's expert opinion provided the district court with a reasonable estimate of the child's future costs of psychological treatment, and such opinion stands unrebutted in the record. The district court expressly considered, and found partially valid, the defendants' concerns about the lack of a formal interview and resiliency variances. For those reasons, the district court declined to award the child any restitution for future psychiatric treatment or medical expenses. But the district court found there was "no question" the victim would incur future

psychological treatment costs. This last finding, the only finding we are asked to review, is not clearly erroneous under these appalling facts.

The Supreme Court has recognized the commonsense principle that childhood sexual abuse results in untold psychological harm to its victims. See, e.g., Kennedy v. Louisiana, 554 U.S. 407, 435 (2008) ("Rape has a permanent psychological, emotional, and sometimes physical impact on the child . . . . We cannot dismiss the years of long anguish that must be endured by the victim of child rape."). The harm to the victim here is undeniable and considerable, and she leaves little doubt she will seek all the psychological treatment she can afford. If the eloquence of her statements to the district court at the defendants' sentencing hearings is any indication, she possesses the determination to clear the regrettably high hurdles of her life.

## III.   CONCLUSION

We affirm in part and reverse in part. The $200,000 restitution award is affirmed. The restitution payment special conditions are vacated, and the alternative restitution orders are vacated. We remand to the district court for further proceedings not inconsistent with this opinion.

_____