# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3532

_____

United States of America,

*Plaintiff - Appellee*,

v.

Jessyca Hoskins,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: April 7, 2017
Filed: November 29, 2017

_____

Before COLLOTON and BENTON, Circuit Judges, and GERRARD,[1] District Judge.

_____

GERRARD, District Judge.

Jessyca Hoskins was convicted of distributing a visual depiction of a minor engaging in sexually explicit conduct and ordered to pay restitution of $7,500. She

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, sitting by designation.

argues that the evidence was insufficient to establish either that the victim's losses were proximately caused by the offense, or the amount of the loss. We affirm.

I.

The victim in this case was 14 years old when Hoskins videorecorded her sexual assault. The victim was supposed to be spending a night with a friend, but instead the two girls went to Hoskins' apartment. They stayed there for most of the weekend drinking, smoking marijuana, and going out to nightclubs.

It was there that the victim was introduced to Jason Henry, also known as "All Star," who had been invited over to meet the victim with the idea that he could become the victim's pimp. Henry pimped her to LaQuentin Jones, and Hoskins videorecorded Jones and the victim having sex while others watched. While it was happening, the victim said "no, no" or "stop, stop," and held her hands up in the direction of the camera. Hoskins sent the video to several people.

Upon learning some of what had happened, the victim's mother took her to a hospital, and the hospital called Fayetteville police. Police interviewed one of the people to whom the video had been sent. At least one copy of the video was taken from the phone of a schoolmate of the victim.

Henry was convicted in state court of prostitution and sexual assault. Jones was also convicted of sexual assault in state court. And Hoskins was charged in federal court with, among other things, knowing distribution of a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Hoskins pled guilty to that charge.

The victim's mother testified at sentencing about the effect of the offense on the victim, and in particular the effect of the videorecording and its distribution. She

said that the victim now dislikes being videorecorded, and has nightmares about it. She asked the court to "imagine being 14 and going to school and the kids at your school have seen a video of you being surrounded by other people and being. . . while someone cheers it on?" (Ellipsis in original.) "[I]t would be naive of us to believe," she said, "even if it is supposition, that this video went one place and stopped."

Hoskins was sentenced to 72 months' imprisonment and a $2,400 fine, and the district court set another hearing on the matter of restitution. A victim impact statement completed by the victim's mother described $38,700 in crime-related costs, for a variety of expenses including private therapy and out-of-state travel related to mental health treatment. Invoices and a ledger were provided to substantiate some of those amounts. And the victim impact statement specifically sought $10,000 for future medical expenses.

The district court[2] ordered Hoskins to pay $7,500 in restitution. The court analogized the situation to that presented in *Paroline v. United States*, in which the Supreme Court addressed how to assess the proximate cause of a victim's losses from the possession of child pornography. 134 S. Ct. 1710 (2014). The court reasoned that *Paroline* was "highly instructive" because this case, like *Paroline*, involves an injury caused by Hoskins' distribution of images of the victim's rape.

The district court began by estimating the victim's full damages, as a "rough guidepost" for determining an amount appropriate to Hoskins' offense. The court found that the victim had incurred a total of $11,895 in documented losses, based on the invoices and ledger provided by the victim's mother. The court further credited $3,000 in incurred but undocumented damages, explaining that it was intended to be

---

[2]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

a "reasonable but low estimate," given the costs normally associated with travel, emergency room care, and psychiatric or psychological treatment.

The court also found, based on the victim impact statement and in-court testimony of the victim's mother, that the victim was likely to incur future medical expenses. The court estimated the victim's future medical expenses based on the records of medical expenses already incurred, concluding that she would incur at least $40,000 in future psychological and related expenses. The court characterized that as "an extremely low estimate. Projecting 15 years of outpatient therapy at a modest average of $50 per week, for example, is $39,000 alone. This does not include any inpatient care, medications, or other medical expenses that [the victim] may require." This brought the court's determination of the victim's total damages to $54,895.

Then, the district court turned to a determination of what amount of those damages was proximately caused by Hoskins. The court acknowledged that most of Hoskins' damages were attributable to Henry, Jones, and others–but, the court found, "Hoskins' actions proximately caused a significant part of those damages too." Hoskins filmed the victim being raped, and distributed that video to another minor. And the victim's mother, the court noted, described the victim's ongoing trauma as being premised in part on the constant fear that the video of her rape has been, or could be, available on the Internet.

So, the district court concluded, a restitution award of $7,500 was appropriate in this case. Hoskins timely appealed from the court's order awarding restitution. *See Manrique v. United States*, 137 S. Ct. 1266, 1272-73 (2017).

## II.

We review the district court's decision to award restitution for abuse of discretion, but any fact findings as to the amount are reviewed for clear error. *United*

*States v. Carpenter*, 841 F.3d 1057, 1060 (8th Cir. 2016).  The government bears the burden of proving the amount of restitution based on a preponderance of the evidence.  *Id*.

Hoskins' argument is twofold.  She contends that the district court erred in awarding restitution because the evidence did not provide a basis for the court to ascertain the amount of the loss with reasonable certainty.  And, she argues, the court erred in finding that Hoskins' conduct proximately caused the victim's injury.

## A.

Hoskins' first argument is that the government failed to meet its burden to prove the loss sustained by the victim by the preponderance of the evidence.  *See* 18 U.S.C.  3664(e); 18 U.S.C.  § 2259(b)(2) (citing § 3664).  Specifically, Hoskins takes issue with the sufficiency of the evidence with respect to future medical expenses.  She asserts that "[t]he record in this case contains no reliable expert medical testimony as to the amount of future psychological treatment that will be required by [the victim]."[3]  "There was," Hoskins argues, "no evidence presented that would allow the court to conclude that [the victim] would require 15 years of outpatient therapy (or a longer term of therapy, or a shorter term, or a different type of treatment)."  So, Hoskins concludes, "[t]he court's $40,000 estimate was essentially arbitrary, and the total amount of [the victim's] loss was thus not ascertained with reasonable certainty."

---

[3]The district court was provided with a letter from a trauma and recovery specialist, who opined that the best course of treatment in "traumatic cases involving sex trafficking" is initially a residential facility, followed by an outpatient treatment program and then a mentoring or support program, and advised that the average cost of residential treatment is $2,000 per week and outpatient treatment is $1,000 per week.  But the court, for a number of reasons, did not find that evidence credible, and did not rely on it.

But as a general matter, it is well-established that mandatory restitution pursuant to § 2259 allows restitutionary damages for the future costs of therapy. *United States v. Funke*, 846 F.3d 998, 1001 (8th Cir. 2017). And "[a]lthough predicting future psychological damages is notoriously difficult, the district court was only required to make a reasonable estimate, not establish the victim's future treatment costs with certainty." *United States v. Palmer*, 643 F.3d 1060, 1067 (8th Cir. 2011).

Hoskins points out that in *Palmer*, the district court benefitted from the opinion of a child psychologist who opined about the future medical expenses to be expected for the victim in that case, despite not having interviewed her. *See id.* at 1063-64. But in the context of already-incurred expenses, we have held that the district court was entitled to rely on the testimony of the victim and her mother, and "a basic knowledge of medical expenses," in determining the amount of restitution to be awarded. *United States v. Emmert*, 825 F.3d 906, 911 (8th Cir. 2016). There is no reason that an estimate of future medical expenses cannot be based on similar evidence, so long as the estimate is reasonable. *See Palmer*, 643 F.3d at 1067.

As we recognized in *Palmer*, there is a certain degree of conjecture involved in any estimation of future psychological damages. *See id.* And Hoskins does not take issue with the district court's factual finding that the victim is likely to incur future medical expenses in some amount. The court's conservative estimate of those expenses, based on the testimony of the victim's mother and the documented expenses already incurred, was not clearly erroneous.

B.

Hoskins also contends that her conduct did not proximately cause the loss suffered by the victim. She argues that the district court erred in relying upon *Paroline*, which she says is inapplicable because it was "intended to assist the district

-6-

courts in awarding restitution in typical child-pornography possession cases based on loss directly tied to the wide circulation of images among thousands of people." The instant case, she suggests, should instead have been resolved by a "traditional causal analysis." But while *Paroline* is not factually on point, the Supreme Court's reasoning in that case drew on general principles of proximate cause, discussing them in some detail, and it is those principles that are relevant here.

Pursuant to *Paroline*, restitution is proper to the extent that the offense "proximately caused a victim's losses." 134 S. Ct. at 1722. The Court explained, however, that "the most difficult aspect of this inquiry concerns the threshold requirement of causation in fact." *Id.*

> But the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes, including possession, assuming the prerequisite of factual causation is satisfied. The primary problem, then, is the proper standard of causation in fact.

*Id.* The Court noted that one "traditional way" of proving causation in fact was "but for" causation; in *Paroline*, however, a showing of but-for causation could not be made. *Id.* The Court nonetheless found that § 2259 did not require but-for causation, and that restitution could be awarded in an amount "that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 1727.

Hoskins is correct that in this case, we do not have the problem presented in *Paroline*, where the victim's losses were caused by ongoing traffic in images but it was impossible to trace a particular amount of those losses to the defendant. *See id.* But that does not make this case more complex–rather, it simplifies this case because to the extent that the victim's losses are caused by traffic in her images, it is possible

to trace a particular amount of those losses to Hoskins. It is, in fact, possible to trace *all* such losses to Hoskins, because in this case, a showing of but-for causation can be made. Distribution of the victim's images began with and is attributable to Hoskins.

The real gravamen of Hoskins' argument, though, is that the victim's "past and future medical and psychological treatment was necessary due to the sexual abuse she suffered" and that Hoskins "cannot be ordered to pay restitution for losses resulting from the [victim's] sexual exploitation and assault."[4] But as set forth above, the evidence here *does* identify aspects of the victim's injuries that are specifically attributable to the distribution of her images. And determining the amount of restitution where a number of causes contributed to the victim's losses was addressed in *Paroline*: the district court "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." 134 S. Ct. at 1727-28. That "cannot be a precise mathematical inquiry" but, rather, "involves the use of discretion and sound judgment." *Id.* at 1728.

Furthermore, the Supreme Court expressly rejected the argument that apportionment of liability for a victim's losses is untenable where those losses are arguably indivisible. *Id.* The Court explained that while it might be in some sense a "fiction" to say that a defendant caused a particular amount of losses, it was necessary to "define a causal standard" for § 2259 that "effects the statute's purposes, not to apply tort-law causation concepts in a mechanical way in the criminal restitution context." *Id.* at 1729. District courts, the Supreme Court said,

---

[4]It bears recalling that while Hoskins also participated in the victim's assault, restitution under § 2259 is proper "only to the extent the defendant's *offense* proximately caused a victim's losses." *Paroline*, 134 S. Ct. at 1722 (emphasis supplied). So, for purposes of restitution, only losses proximately caused by the offense of conviction–distribution of child pornography–are at issue.

can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others.

*Id.* The district court's careful exercise of its discretion in this case was faithful to those principles.

In sum, the evidence before the district court provided a basis to conclude that some of the victim's losses were uniquely caused by Hoskins distributing the video of her assault. The court did not abuse its discretion in deciding to award restitution, nor did it clearly err in assessing the amount of restitution to be awarded.

The district court's restitution award is affirmed.

———————————————