# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-1331

———————————————

United States of America

*Plaintiff - Appellee*

v.

Nathan Lee Kempter, also known as Nathan L. Kempter

*Defendant - Appellant*

————————

Appeal from United States District Court
for the District of Nebraska - Lincoln

————————

Submitted: November 18, 2021
Filed: March 29, 2022

————————

Before BENTON, KELLY, and ERICKSON, Circuit Judges.

————————

KELLY, Circuit Judge.

Nathan Kempter was convicted by a jury of attempted enticement of a minor and interstate travel with intent to engage in illicit sexual conduct. On appeal, Kempter challenges the sufficiency of the evidence, as well as several aspects of his sentence. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

# I.

In July 2019, at age 32, Kempter began corresponding with then-14-year-old C.I. through the social media site Reddit, specifically on a Subreddit for runaway teens. After their initial contact, on or about July 23, 2019, C.I. requested they use the social media website Tumblr to communicate instead. At first, Kempter and C.I. discussed how Kempter could help C.I. run away from home, but Kempter then introduced a variety of sexual topics to their conversations. Kempter knew C.I. was 14 years old.

On July 30, 2019, Kempter and C.I. began forming a plan in which Kempter would pick up C.I. in Lincoln, Nebraska, to help her run away. According to C.I., on that date Kempter's messages also became "more sexual." In messages sent July 30 and 31, Kempter asked C.I. about her interest in sex, bondage, and pornography, and expressed his desire to engage in sexual activity with her. He also asked C.I. to send him selfies. On August 1, 2019, Kempter suggested they speak over the phone to discuss logistics of him helping C.I. run away so that their conversation would not be in writing, and he told C.I. to delete her call history after they spoke. Ultimately, they arranged for Kempter to meet C.I. outside her parents' house in Lincoln and to take C.I. to his home in Highlands Ranch, Colorado.

On August 2, 2019, Kempter drove to C.I.'s house, and she got into his car. Kempter lowered the passenger seat and covered C.I. with a coat so she was less visible. During the drive, Kempter touched C.I.'s breasts and legs, and talked about his sexual interest in her. Kempter stopped at a Walmart in Lexington, Nebraska, about two and half hours from Lincoln, where he purchased different clothes for C.I. to wear and a blanket to keep her covered. After the Walmart stop, Kempter's touching became more forceful. At one point, he pulled the car over, got on top of C.I., and put his hands on her neck. During the trip, Kempter told C.I. what to say if anyone found them together and, at some point, he gave C.I. his phone to use to delete her Reddit account. Kempter asked her to delete Tumblr too, but she could not do so without her phone, which she left at home in Lincoln.

Meanwhile, C.I.'s parents discovered she had left home without her cell phone and contacted the Lincoln Police Department (LPD). They provided C.I.'s cell phone and a phone bill, which showed a call to a number from Denver, Colorado. With this information and some additional investigation, the police were able to find Kempter's address, estimate the route Kempter would be driving, and then use cell phone tower pings to track his car. LPD contacted the Douglas County Sheriff's Office in Colorado, and when Kempter and C.I. arrived at Kempter's house in Highlands Ranch, officers were waiting for them. Kempter was taken into custody. Officers asked how old the girl in the car was, and Kempter told them she was 14. C.I. was placed in a police car, where video footage recorded her expressing frustration that they had been caught. The following day, a forensic nurse examined C.I. and documented swelling on the front of C.I.'s neck and abrasions and bruising around her breasts.

On August 21, 2019, Kempter was charged in a two-count indictment with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), and interstate travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). Kempter pleaded not guilty, and his case proceeded to trial. The defense made a motion for acquittal under Federal Rule of Criminal Procedure 29 at the close of the government's case and after the defense rested. The district court[1] denied the motions, and, on September 2, 2020, the jury found Kempter guilty on both charges.

At sentencing, Kempter objected to sentencing enhancements proposed in the Presentence Investigation Report (PSR) for undue influence of a minor and obstruction of justice. After hearing testimony and argument from both parties, the district court overruled the objections and calculated a total offense level of 36 and a criminal history category of I, resulting in a United States Sentencing Guidelines range of 188 to 235 months of imprisonment and a supervised release range of five years to life. The district court imposed a sentence of concurrent terms of 228

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

months of imprisonment and 12 years of supervised release on each count, and ordered Kempter to pay $13,895.36 in restitution to C.I. and her family. Kempter timely appealed.

II.

Kempter challenges the sufficiency of the evidence on both counts of conviction. The court reviews "the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. King, 898 F.3d 797, 808 (8th Cir. 2018) (quoting United States v. Tillman, 765 F.3d 831, 833 (8th Cir. 2014)). A verdict will be overturned "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

To convict a defendant of inducing a child to engage in criminal sexual activity in violation of 18 U.S.C. § 2422(b), as charged in Count 1, the government must prove that the defendant:

> (1) used a facility of interstate commerce, such as the internet or telephone system; (2) knowingly used the facility of interstate commerce with intent to persuade or entice a person to engage in illegal sexual activity; and (3) believed that the person he sought to persuade or entice was under the age of eighteen.

United States v. Shinn, 681 F.3d 924, 931 (8th Cir. 2012) (quoting United States v. Young, 613 F.3d 735, 742 (8th Cir. 2010)). A conviction based on attempt requires proof that the defendant intended to commit the predicate offense and conduct that constitutes a substantial step towards the crime's commission. Id. As to Count 2, "[t]o convict under 18 U.S.C. § 2423(b), the government must prove that the defendant traveled in interstate commerce with the intent to engage in illicit sexual conduct." United States v. Willins, 992 F.3d 723, 726 (8th Cir. 2021).

It is undisputed that Kempter and C.I. communicated over the internet and that Kempter believed C.I. was under the age of 18. Kempter argues, however, that the evidence was insufficient to show that he used the internet to entice C.I. to engage in illegal sexual activity. He insists their chats were about hypothetical sexual conduct only and show his sole purpose in communicating with C.I. and traveling from Colorado to Nebraska was to help her run away from home.

There was abundant evidence from which the jury could conclude that Kempter intended to "persuade or entice" C.I. to engage in "illegal sexual activity." Kempter began by telling C.I. he could help her run away but soon turned the conversation to sexual topics, both expressing his own sexual desires and asking C.I. about her sexual interests. The two also discussed C.I.'s reasons for wanting to leave home, and Kempter regularly assured her that he wanted to help. But viewing the evidence in the light most favorable to the verdict, the entire string of chats reflected an ongoing effort to persuade C.I. to trust him and, in turn, engage in illegal sexual activity. Likewise, the jury heard sufficient evidence from which it could infer that Kempter traveled between states "with the intent to engage in illicit sexual conduct." Contrary to Kempter's assertions, the record includes numerous statements of his intent to engage in sexual conduct with C.I. after he picked her up in Lincoln, as well as evidence that Kempter acted on those intentions by touching C.I. during the drive to Highlands Ranch.

III.

Kempter also challenges his sentence. We review the district court's application of the Guidelines de novo. United States v. Waller, 689 F.3d 947, 957 (8th Cir. 2012) (per curiam). At sentencing, the district court may rely on facts proved by a preponderance of the evidence, and we review such factual findings for clear error. United States v. Anderson, 926 F.3d 954, 957 (8th Cir. 2019). We review a challenge to the substantive reasonableness of a sentence "under a 'deferential abuse-of-discretion standard.'" United States v. Manning, 738 F.3d 937, 947 (8th Cir. 2014) (quoting United States v. Beasley, 688 F.3d 523, 535 (8th Cir.

2012)). A district court must consider all sentencing factors in 18 U.S.C. § 3553(a), but retains "wide latitude" in how it weighs the factors, United States v. Johnson, 916 F.3d 701, 703 (8th Cir. 2019), and need not "categorically rehearse each of the section 3553(a) factors on the record . . . as long as it is clear that they were considered," United States v. Dieken, 432 F.3d 906, 909 (8th Cir. 2006).

## A.

Kempter first contests the application of USSG § 2G1.3(b)(2)(B), a two-level enhancement for "unduly influenc[ing] a minor to engage in prohibited sexual conduct." The application notes for this enhancement instruct the court to "closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." But when a participant is at least ten years older than the minor, such as here, there is a rebuttable presumption that the enhancement applies, as "some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor." USSG § 2G1.3(b)(2)(B), cmt. (n.3(B)). The district court concluded that Kempter had not rebutted the presumption and applied the enhancement.

On appeal, Kempter argues that the court focused solely on the age difference and ignored the weight of other evidence, including that C.I. wanted to run away and was initially upset that law enforcement had found them. According to Kempter, the district court did not "closely consider the facts of the case" as required. But the fact that a "victim traveled freely with [the] defendant" does not rebut the presumption that the undue influence enhancement applies, United States v. Hagen, 641 F.3d 268, 271 (8th Cir. 2011), and the enhancement may be upheld based on a "manipulative adult's building a relationship with a minor for the purpose of eventual sexual activity," id. (quoting United States v. Lay, 583 F.3d 436, 445 (6th Cir. 2009)); see also United States v. Hornbuckle, 784 F.3d 549, 556 (9th Cir. 2015) ("The undue-influence enhancement is not limited to force, fraud, or coercion. It also reaches manipulating and preying upon a vulnerable victim." (cleaned up) (quoting United States v. Reid, 751 F.3d 763, 768 (6th Cir. 2014))). The district

court did not clearly err in concluding this was a case of grooming: Kempter knew C.I. wanted to run away from home, and he manipulated that weakness by corresponding with C.I. for the purpose of eventual sexual activity. The district court did not err in applying the enhancement.

B.

Kempter also appeals the two-level sentencing enhancement for obstruction of justice. See USSG § 3C1.1 (providing for an enhancement when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and the obstructive conduct was related to either the offense of conviction or a closely related offense). The district court relied on the evidence that Kempter asked C.I. to delete her social media and call history to avoid detection both before and at the time he picked her up in Lincoln, as well as on chats between Kempter and C.I. about taking steps to prevent her parents from finding her. The district court found that Kempter "tried in every way to impede the investigation."

Kempter now argues that the enhancement was improperly applied because neither he nor C.I. had any reason to believe that law enforcement would become involved since C.I. was running away from her parents, not the law. We find this argument unavailing. The record shows that Kempter made repeated efforts to avoid detection, including researching Nebraska kidnapping and abduction laws. Such conduct supports an inference that Kempter believed he was or would be under investigation, and thus willfully attempted to obstruct or impede the administration of justice. See United States v. Dillard, 370 F.3d 800, 805 (8th Cir. 2004) (suggesting that evasive or obstructive conduct itself may show that a defendant believes he is likely under investigation).

Moreover, to the extent Kempter argues that the enhancement was improper because any obstructive conduct occurred before the investigation began, we

disagree. We have held that, for purposes of USSG § 3C1.1, "the obstructive conduct must occur after an official investigation begins." United States v. Water, 413 F.3d 812, 819 (8th Cir. 2005) (citing United States v. Stolba, 357 F.3d 850, 852 (8th Cir. 2004)). Since Stolba, our leading case on this issue, the Guidelines application notes for USSG § 3C1.1 have been amended to clarify that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." USSG § 3C1.1, cmt. (n.1).

We have not revisited Stolba in light of the updated Guidelines commentary, and we need not do so here because the district court did not clearly err in applying the enhancement as the record shows that Kempter willfully attempted to impede law enforcement throughout the entirety of the offense conduct. Water, 413 F.3d at 819 ("We review the imposition of [the obstruction of justice] enhancement for clear error."). Though the timeline of the obstructive conduct after Kempter picked up C.I. in Lincoln—deleting social media accounts, hiding C.I. from view in the car—compared to the starting point of the official investigation is not entirely clear, the record supports an inference that at least some of the steps Kempter took occurred after LPD began tracking the car. The record shows that C.I.'s family contacted LPD around 5 p.m. on August 2, 2019, and that Kempter stopped at Walmart in Lexington—a town about two and a half hours from Lincoln—around 7:30 p.m. Kempter's efforts to hide C.I. from view, to make up a story for C.I. to use if anyone questioned them, and to delete C.I.'s social media accounts during the drive to Highlands Ranch all were willful attempts to impede any investigation into his conduct while traveling interstate.

C.

Kempter also claims the district court imposed a substantively unreasonable sentence. He argues the district court failed to consider his military service, his employment history, that his computer contained no child pornography, and his lack

of criminal history. We find no abuse of discretion. A review of the record shows that the district court properly considered the § 3553(a) factors. Contrary to Kempter's assertion, the district court explicitly addressed his military service but simply did not find it to be a mitigating factor. Kempter's position is essentially that the district court did not give mitigating § 3553(a) factors sufficient weight, but this type of disagreement is not a ground for reversal. See, e.g., United States v. Campbell, 986 F.3d 782, 808 (8th Cir. 2021) ("Simply because the district court weighed relevant factors more heavily than the defendant would prefer does not mean the district court abused its discretion." (cleaned up) (quotation omitted)).

III.

As a special condition of supervised release, the district court ordered that Kempter submit to polygraph examinations. Kempter challenges this condition as not rationally related to the crime of conviction and unnecessary to achieve the purposes of sentencing under § 3553(a). We review special conditions of supervised release for abuse of discretion. United States v. Smith, 960 F.3d 1107, 1109 (8th Cir. 2020). A district court is "encouraged to provide an explanation of how the conditions satisfy the requirements of [18 U.S.C.] § 3583(d), but where the basis for the special conditions can be discerned from the record, reversal is not required." United States v. Simpson, 932 F.3d 1154, 1156 (8th Cir. 2019).

A special condition of supervised release must be "(1) reasonably related to the factors in 18 U.S.C. § 3553(a); (2) no greater deprivation of liberty than reasonably necessary for the purposes in 18 U.S.C. § 3553(a); and (3) consistent with any pertinent policy statements by the Sentencing Commission." Smith, 960 F.3d at 1109 (citing 18 U.S.C § 3583(d)). For defendants whose offense includes deceptive conduct or who have otherwise shown indicia of lacking candor with the court or the probation office, polygraph testing is a permissible condition of supervised release. See id. at 1109–10 (discussing cases in which polygraph conditions have been upheld). We have also noted that polygraph testing may be

included when it is used for treatment purposes, not as a means to gather evidence. Id. at 1110.

There is no allegation that Kempter was dishonest with the court or the probation office, but he did make numerous attempts to evade detection and avoid apprehension, and he asked a minor to delete evidence of his criminal activity. Here, the district court—which presided over the trial and the sentencing—had before it all of the offense conduct when it imposed the special condition. While the justification for the condition was not detailed, a reason for it can be discerned from the record, and we find no abuse of discretion. Simpson, 932 F.3d at 1156.

IV.

Finally, Kempter appeals the district court's decision to award restitution. We review de novo legal interpretations made by the district court in determining whether to award restitution. United States v. Gammell, 932 F.3d 1175, 1180 (8th Cir. 2019), cert. denied, 140 S. Ct. 2809 (2020). We review restitution awards for abuse of discretion and any factual findings about the amount to be paid for clear error. United States v. Hoskins, 876 F.3d 942, 945 (8th Cir. 2017).

A.

The district court awarded restitution pursuant to 18 U.S.C. § 2429, a provision of the Abolish Human Trafficking Act of 2017 (AHTA).[2] Kempter does not dispute that this provision applies to his convictions but argues that the award is not authorized by the statutory definition of allowable restitution. Section

_____

[2]The AHTA, among other things, established mandatory restitution for victims of commercial sexual exploitation and human trafficking, including enticement of a minor to engage in illegal sexual conduct under 18 U.S.C. § 2422(b). See Abolish Human Trafficking Act of 2017 § 3(a), Pub. L. No. 115-392, 132 Stat. 5250 (Dec. 21, 2018).

2429(b)(1) of the AHTA instructs that the court "shall direct the defendant to pay the victim . . . the full amount of the victim's losses"—but an issue arises when looking to the definition of that term. Section 2429(b)(3) states, "[a]s used in this subsection, the term 'full amount of the victim's losses' has the same meaning as provided in section 2259(b)(3)." 18 U.S.C. § 2429(b)(3). But, as Kempter points out, no definition is found at § 2259(b)(3). Rather, that provision states: "Enforcement. – An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." Definitions are found, instead, one subsection later, in § 2259(c). There, "full amount of the victim's losses" is defined, in relevant part, as: "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." 18 U.S.C. § 2259(c)(2). It appears therefore, that the cross-reference in § 2429(b)(3) should be to § 2259(c)(2), rather than to § 2259(b)(3).

The legislative history of the relevant provisions makes sense of how this gap in the AHTA restitution statute likely came to be. The AHTA, including § 2429(b)(3), became effective December 21, 2018. Section 2259 was amended on December 7, 2018, through passage of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA).[3] Before the AVAA, § 2259(b) was the definitions subsection, rather than § 2259(c) as it exists now, with § 2259(b)(3) defining "full amount of victim's losses." Congress apparently failed to update the cross-reference for the definition in the AHTA to match the amended version of § 2259.

---

[3]The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 was passed in response to Paroline v. United States, 572 U.S. 434 (2014), see United States v. Clemens, 990 F.3d 1127, 1129 (8th Cir. 2021), and among other provisions, established minimum levels of restitution for each victim of a child pornography offense, see 18 U.S.C. § 2259(b)(2)(B); United States v. Green, 954 F.3d 1119, 1125 (8th Cir. 2020).

We conclude that this is a scrivener's error and use the definition found at § 2259(c)(2) for purposes of applying § 2429(b)(1). A scrivener's error that produces an absurd result constitutes a narrow exception to the principle of adherence to the plain meaning of a statute. Owner-Operator Indep. Drivers Ass'n v. United Van Lines, LLC, 556 F.3d 690, 694 (8th Cir. 2009). A scrivener's error exists only if, after reviewing the structure, language, and subject matter of the statute in detail, the court finds no plausible purpose of the provision at issue when read holistically with the rest of the statute. See id. (citing U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 462 (1993); Holloway v. United States, 526 U.S. 1, 19 n.2 (1999) (Scalia, J., dissenting)). In Owner-Operator Independent Drivers Association, this court noted that the Supreme Court has treated Congress's "failure to delete an inappropriate cross-reference" as "simply a drafting mistake," 556 F.3d at 694 (quoting Chickasaw Nation v. United States, 534 U.S. 84, 90–91 (2001)), justifying departure from "rigid adherence to the plain meaning of a statute," id. Reading §§ 2429 and 2259 holistically, there is no plausible explanation as to why § 2429(b)(3) would cite the "enforcement" provision rather than the definition of "full amount of the victim's losses" other than that Congress failed to update the cross reference.

Taking the two provisions together and reading in the correct cross-reference is the only reasonable construction. See United States v. Mahoney, No. CR18-0090, 2019 WL 1040402, at *2 (W.D. Wash. Mar. 5, 2019) ("As used in this subsection, the term 'full amount of the victim's losses' has the same meaning as provided in section 2259[(c)(2)]." (alteration in original) (quoting 18 U.S.C. § 2429(b)(3))). Accordingly, the district court was authorized to award restitution for the full amount of C.I.'s losses as defined in § 2259(c)(2).

B.

The amount of restitution awarded is the last issue we address. The district court awarded restitution of $13,895.36, attributed to out-of-pocket costs incurred by C.I.'s family for therapy and educational accommodations for C.I. Kempter

argues the district court abused its discretion by awarding restitution for damages not caused by Kempter but inflicted by other perpetrators both before and after his offense conduct.

The applicable restitution provision includes a non-exhaustive list of the types of damages that may be awarded to reimburse a victim's losses, including medical services, therapy, and "any other relevant losses incurred by the victim." 18 U.S.C. § 2259(c)(2). "[R]estitution is proper to the extent that the offense 'proximately caused a victim's losses.'" Hoskins, 876 F.3d at 946 (quoting Paroline, 572 U.S. at 448). Restitution may be awarded in an amount "that comports with the defendant's relative role in the causal process that underlies the victim's general losses," even if a showing of but-for causation cannot be made. Paroline, 572 U.S. at 458. When multiple causes contribute to a victim's losses, the district court must use its discretion and sound judgment to determine the amount of restitution. Hoskins, 876 F.3d at 947.

The expenses the district court identified—therapy and educational resources—fall within the definition of "full amount of the victim's losses" through the enumerated and catchall terms. As to whether the damages were proximately caused by Kempter's offenses, the district court did not clearly err in concluding that they were. At sentencing, C.I.'s father testified that all of the expenses at issue were incurred after August 2, 2019, and the family would not have pursued the services for C.I. but for Kempter's conduct. Acknowledging that restitution may be awarded for only those losses proximately caused by the offenses of conviction, the district court said it had "little difficulty connecting [C.I.'s] damages to the conduct of [Kempter's] offenses." The district court was not obligated to make a "precise mathematical inquiry" into the amount of damages caused by Kempter's conduct as compared to the conduct of others, see Hoskins, 876 F.3d at 947, and we see no abuse of discretion in the restitution award as ordered.

## VI.

For the foregoing reasons, we affirm the district court's decisions in all respects.

_____